*307 Opinion op the Court,
bv Judge Mills.
THIS is an ejectment, brought on the demise of John L. May, and Daniel Eppes and'Polly, his wife, patent issued to John May in his lifetime. After the tenant in possession had appeared and was made de *308 fendand on the usual terms, the plaintiff below moved the courfc to amend the declai'ation, by adding additional counts in the names of lessors of the plaintiff not before known in the cause. The court refused to per-raj¡. this amendment, and the counsel for the plaintiff below excepted, and having been unsuccessful in the of the cause, has appealed, and assigned this as error.
Parol evidence admit-the contents6 of a sumed to be destroyed.
An estate vised to executors, or aTshalíqua”-be fy, is a tingent vest until that event occurs; uatil descends to6 the heirs.
tutor’s but before the qualificaexecutors*18 & whilst his’ heirs were on part of their land a Ju^°r the limitations did not com-Sn”06until the=qualification of the In case of a ^e" ™ght of entry cannot be tn-from tbe byabar which commenees and particular es-but in a c°ntingeM ¡s 0_ therwi'e, and eve.rí tbinS destroy or bar the particular es-remainder,
*308 jt mjgbt he difficult to maintain the position, that the plaintiff in ejectment, in any case, can amend by introducing new lessors. It is substantially introducing a new action; and although the procedings in eject-are measurably fictitious, yet the fiction must be so moulded as not to subject the opposite party to too great inconveniences on the one hand, or to subject him the investigation of too many titles, after he has prepared himself to meet one only, or to permit plaintiffs t0 ad¿ a new action to an old one. No precedent can found in the ancient law, for such an amendment; indeed, the declaration in ejectment being now for process as well as pleading, the allowt0 amen'J> by ancient authorities, are very narrow and limited. We are aware that modern practice has allowed greater latitude; but it is only to the same parties, to mould and amend the demise, so as to reach the merits of the original controversy. The lessor of the plaintiff is the real party in an ejectment, and he is indulged in amending; but this is not allowed to others, already parties. To introduce new parties in a ’suit at common law, is not so properly styled an amend-as the institution of a new suit.
The index of the report on the cases of Thomas vs. Head, 1 Marsh. 450, and Kendall vs. Slaughter, ibid 375, to come to a different conclusion; but the ex-the court hi these Cases must have been misunderstood. In the first cited case, the decision of inferior court, which refused such an amendment, is expressly approved, and in the one last cited, the court “that it may be a question, whether, under any circumstances, the name of a new lessor ought to have been permitted;” and in that case, it was evidently, under its special circumstances, properly disallowed,. From these decisions we draw quite a different inference, and now, to correct any erroneous imhave n0 hesitation in declaring it a general that such amendments not to be allowed.
™?®eisas regards executory devi ses; whether certain or contingent, tííey cannot barecl by or other act.
. . on whichThe act of limitations operthere mustie a right of entry existing a^etba*ime of
On the trial of this cause the plaintiff below did not attempt to show title in any of the lessors, except the two original ones, John L. May and Polly Eppes, and that by the following state of evidence: A patent to John May in 1785, the death of John May on the river, at the mouth of Scioto, in 1790, and that John L. May was his only son, born in 1784 or 1785, and Polly his only daughter, born on the 18th of July 1788, intermarried with Daniel Eppes, the 25th of 1810; that Eppes, and wife, and the widow of May, had always remained in Chesterfield county, Virginia; but John L. May came to this state in Í806, to read law, where he remained for several years, and is still liere, except that since he first came he has been or twice to Virginia, declaring his intention of residing there, for the purpose of giving the federal court diction of his suits; and finally, that the defendant below resided on the land, within the bounds of May’s patent, at the commencement of the suit.
The defendant gave in evidence a junior patent in the name of Reuben Kemp, covering his residence, and proved by a witness, who had been the agent of Kemp, that in the year 1793, he, the witness, on behalf of Kemp, sold the land contained in Kemp’s patent, to the defendant, now appellee, Hill, and gave him a hond for the conveyance. Shortly afterwards, in the same year the appellee set some hands to work, clearing ground,, and in the summer of the year 1794 raised a crop of corn thereon, and in the year 1795 moved his family upon the land, and prior to the first of January 1795, had about forty-five acres cleared, and now about one hundred under cultivation. Not long after the defendant had so taken possession, Hill met with Kemp, and surrendered to him the bond given by the witness, Kemp’s agent, and Kemp gave his own bond in lieu thereof. The appellants objection to any proof of a bond from the witness, as Kemp’s agent, to the appellee, unless the bond itself was produced; but the court overruled the objection, and. admitted the evidence.
It was, no doubt, correct, that the bond, if accessible, ought to have been produced; but as there was proof that this bond was surrendered to Kemp, and was thereby .functus officio, it created a violent presumption that tlie bend was destroyed, or not preserved, there be *310 jng no motive left with Kemp to preserve it. The parol evidence of its existence and contents, was, therefore, properly admitted.
The appellants, on this state of proof, made application for sundry instructions, all contending that the statute of limitations did not bar the heirs of May, under the facts proved, which the court overruled, and instructed for the appellee, to which the appellants excepted.
It is evident that twenty years had elapsed after the settlement of the appellee, as proved, and previous to the commencement of this ejectment, on the last day of. December, 1815. It is also clear that the entry of the appellee was made after the death of May, and while his children were infants. We are, however, not disposed to investigate the instructions given at this stage of the cause, or to decide whether they are or are not correct; for, after the appellants failed in the whole of them, they introduced other evidence, and placed the cause in a quite different attitude. They were first represented as infant heirs of John May, and thus they appeared to claim title. Afterwards, a will was shown, in which he devised the land. We are, therefore, not disposed to encourage parties litigant to place, themselves in one attitude, and then ask instructions, and if they fail, show, by other proof, that the first attitude was false. The trouble and burden of such a practice, to the court that tries the cause, must be great, and its evils may be numerous. And if this court were to de: cide such questions, when it appears from the record that the facts were afterwards changed by the appellants, it would be substantially deciding fictitious or supposed questions, which no court ought to indulge. We shall then proceed to consider the cause as shown in its last aspect.
The will of John May was then introduced. It has been recited by this court, and received its construction in the cases of Baird and others vs. Rowan and others, 1 Marsh. 314, and May's heirs vs. Slaughter, 3 Marsh. 505, decided long since, to which reference is now made. In this will, this and other lands of the testator are devised to his executors, by a devise to the following effect:
“ I give and devise my land to my executors herein after named, and to the survivers and surviver of such *311 of them as may act, and their heirs, for the purpose of selling as much thereof as will pay all my debts of any kind.” The testator then gives various powers and directions to his executors, relative to said land, and then proceeds: “I further will and devise all the rest and residue of my estate, to my beloved wife, Anne May, my children, John and Polly, to be equally divided between them and their heirs.”
He appoints his wife executrix, .and three others executors. But the construction heretofore given to this will, in the cases cited in this court, none of these executors did or could take the estate, without undertaking the executorship; but, in the mean time, the estate descended to the heirs. None of the executors qualified, until, in 1797, the widow, who had previously married Thomas Lewis, took upon her the burden of the execution of the will, and continued to act until 1811, when she died, being still a feme covert, and remaining without the state.
Numerous instructibns were then asked by, and re'fused to the counsel of the plaintiff, and .others were asked by, and given in behalf of the defendant. It will be unnecessary to recite them in detail, as they all rest upori the answer to this inquiry, were the lessors of the plaintiff barred of their right of entry?
The counsel for the plaintiff below contended that both, or, at all events, one of them, were not barred. The defendant’s counsel insisted that their right of entry was tolled, and so the court decided on every application. The solution of this question is now presented to us.
There have been several questions decided with regard to this estate of John May, in this court, heretofore ; but none of them reach this case. Some have presented the same lessors as heirs only. Here, a will is presented. The case of May’s heirs vs. Slaughter, 3 Marsh. 505, presented precisely the same state of facts on the part of the plaintiff below; but the state of evidence here, on the part of the defendant, is widely different. There, the entry was made by the defendant in the lifetime of the testator, and the statute commenced running against him. Here, the entry was not made until after his death, when both of his children were infants, and before his widow had taken her letters ' testamentary. Inhere, it was decided that the *312 statUte not only run before his death, but continued afterwards to run against his representatives, because his estate did not descend, but was devised., and that his widow took the estate cum onere. But, as the entry was here made by the defendant after his death, and before letters testamentary were granted, the questions presented are of a different character. It is said, in the cases of Kendall vs. Slaughter, 1 Marshall, 375, and May's heirs vs. Slaughter, 3 Marsh. 505, that the estate, on the death of John May, descended to his heirs at law, the will notwithstanding, and this point may be considered as settled. In one of these cases, and in the case of Lewis and wife vs. McFarland, 9 Cranch, 151, it is decided, that the estate, on the granting of letters testamentary to Mrs. Lewis, passed to her in 1797; therefore, this point may be considered at rest. The devise of the estate to executors, or such of them as should, act, was a contingent executory devise, and did take effect on her administration. As the title was in the heirs at law, between the death of John May in 1790, and the letters testamentary to his widow in' 1797, and during this period the adverse entry was made, could the right of entry attached to the estate as the executrix took it,be prejudiced? The estate, at May’s death, was free from any adverse possession, and the right of entry clear. We have said that the devise to the executors, or such of them as might act, is a contingent executory devise, and we cannot, by any rule of construction, make it any thing else. There is no pretext for making it a contingent remainder. In the mean time, the estate was left to descend to the heirs, and this created in them a lease and determinable fee simple, as the estate which precedes the contingency. It is, then, as if the testator had. created an .estate which might pass to his executors, on a contingency, by an executory devise in express words.
In case of a ves,ted remainder, the right of entry cannot be taken from the remainder-man by a bar which commences and runs against the preceding particular estate. Sug. Ven. 227-43, and authorities there cited. But in. the case of contingent remainders, the rule is otherwise, and any thing which tends to destroy or bar the particular estate, destroys or affects the remainder. Fedrne on Rem. 465; 2 Saun. 888, n. 9.— But with regard to executory devises, whether certain *313 br contingent, the rule is otherwise; and it is oné of these properties, that they cannot be aliened or barred by any mode of conveyance, whether by recovery, fine, or other act. Therefore, executory devises preserve the estate from injuries, against the particular estate, and thus create a kind of perpetuity, on which courts have placed sundry restrictions, none of which reach this case. Besides, the principle on which the act of limitations operates, is, that there must be a right of entry existing at the time of the bar, which can be affected; and where the person who is supposed to be affected, and those under whom he holds, had nb right of entry, that right is not polled. Here, the estate was free* when devised. The heirs took it, and the adverse entry happened, and progressed to some extent. The executrix took the estate, not holding or claiming under the heirs, but under the testator. It follows^ then, that the right of entry passed to her from the testator, as he held it. If it had been then incumbered, she would have been affected by it* as was held in the case of May's heirs vs. Slaughter; but, as that was not the case, and the executrix claimed, not under the heirs, against whom the time run, she is entitled then to commence the bar, and not before. If the bar is then to commence, it followes clearly, from the evidence, that it was not complete when this action commenced. And although the heirs, on the death of Mrs. Lewis, again took the estate, it came to them from and under her and the testator, and the bar not having been completé against her, cannot be so against them, until the twenty years, counting from the happening of the contingency, are complete. Whether the disabilities of Mrs. Lewis preserved the estate ffom the effect of the bar, we need not enquire; because the necessary time to complete the bar had not transpired.
It follows, therefore, that the court below erred in giving and refusing every instruction, in which it was said, or from which it might be inferred, that the- lessors of the plaintiff were barred.
The judgement must, consequently, be reversed with costs, and the verdict be set aside, and the cause be remanded to the court below, with directions for new proceedings, not inconsistent with this opinion.