■Judge Marshal*!,
delivered the 'Opinion of the Court
— Chief Justice Robertson did not sit in this case.
This was an action of ejectment, brought by Rachel Shackleford, widow of Bennet C. Shackleford, to recover land belonging to her in her own right, which had been conveyed in fee, by her late husband, during the coverture.
On the trial, the plaintiff exhibited a patent to herself, before her marriage, for eight hundred acres of land; and proved the death of her husband in 1823; and that the defendant was in possession of a part of the land included within her patent, at the commencement of the ejectment, in May, 1833. She also proved that the land in controversy had been taken possession of under her patent, and so held ever since.
The defendant then read in evidence, a deed, dated in 1811, purporting to be made by Shackleford and his wife, the lessor of the plaintiff, and to convey in fee simple all the land contained in the said patent, to William Barnett, under whom the defendant claimed by deed. But the deed from Shackleford and wife was not authenticated in such a manner as to pass her estate in the land,— the certificate of the clerk importing only that she had, on privy examination, “declared that she freely and voluntarily relinquished he right of dower in the tract of land” mentioned in the deed.
Barnett, the grantee in this deed, proved that he had purchased the land from Shackleford and wife, in 1809, and paid the purchase money (five thousand dollars) before the deed was made, — that he had taken possession in 1809, and that he and those claiming under him, had been in possession ever since claiming the land as their own, under the above mentioned patent; that he had *290 never seen or conversed with the plaintiff since the death of her husband, and that he claimed under the deed from Shackleford and wife, and no other.
■Proof offered by •dePt — rejected Sr •excluded.
Instructions for plaintiff.
Instructions asked by def’t, but refused.
It was also proved by several witnesses, that the lessor' of the plaintiff had, two or three years before the ejectment was commenced, in conversation with them, stated, in substance, that she and her husband had sold and deeded the eight hundred acres of land to Barnett; that she had been satisfied with the deed, and set up no claim, except for the surplus, and did not know that she could claim more, until she was informed she could claim the whole tract, and as the surplus had not been paid for, ■she concluded to claim the whole, and did so; and it was-admitted on the trial, that the lessor of the plaintiff did, ■during her coverture, sign the deed to Barnett.
The defendant also offered to prove, by Barnett, that, when and before he purchased the land, the lessor of the plaintiff pressed him to buy it, and that the purchase money was to be, and had been, vested in other property, for her special use and benefit. The avowed purpose of ■offering this proof, was to connect the facts referred to, with facts and circumstances subsequent to the death of 'Shackleford, as conducing to show acquiescence in the sale, and a re-delivery of the deed» But the Court would not permit Barnett to testify on the subject.
At the instance of the plaintiff, the Court excluded from the jury the testimony relating to her conversations and statements; and gave the following instructions: — ■
First. That the deed from Shackleford and wife formed no obstruction to the plaintiff’s recovery; and — ■
Second. That, if they believed, from the evidence, that the patent which had been read, covered the land in controversy; that the lessor was the patentee; that her husband died in 1823, and the defendant was in possession of the land at the commencement of the action, they must find for the plaintiff.
The Court refused instructions asked for by the defendant, of the following import:—
First. That, if the deed from Shackleford and wife was originally void, it might be made good and effectual by re-delivery after she was discovert; and that circum *291 stances showing her acquiescence after she became dis-covert, are equivalent to a re-delivery.
Verdict, judgment,and appeal.
Def’ts deed void as to pl’tf.
The alienation or-conveyance, by a husband, of the-wife’s 'inheritance or freehold, during the coverture, makes no. discontinuance thereof; but she, might enter, according to their more-except that his , , , . laudbelongm the wife in respective rights, notwithstanding such alienation or conveyance. Bat (by statute) alienations purporting to pass a greater estate than the alienor has, pass such estate as he may own right,passes h/is interest there ;n; but does not warranty will bar the heir to the value of his inheritance. There - fore, the deed of the husband, of ? to her work a discontinuance of her estate; nor bar her right to enter upon the land, after his death. Nor is she barred by his warranty, as she is not his heir.
Second. That, if ten years had elapsed from Shackle-ford’s death, before suit brought, and the defendant and those under whom he claims had been in adverse possession of the land twenty years before the commencement of the suit, they must find for the defendant.
Under these opinions of the Court, a verdict tvas found For the plaintiff; and a new trial having been refused to the defendant, he has appealed to this Court.
The deed to Barnett was doubtless void as to Mrs. Shackleford, during the coverture, and was decided to be so by this Court, in the case of Barnett vs. Shackleford, 6 J. J. Marshall, 532. This is not controverted by the defendant.
But it is contended, that as the deed of Shackleford alone, it presents some obstacle to the recovery of the land by Mrs. Shackleford, in the present action: and first, on the ground that it is a discontinuance of her estate. But although the alienation of the wife’s estate by the husband, if done by feoffment, fine, or common recovery, in which livery of seizin was actually made, or was acknowledged of record, might, by the ancient common law, have operated as a discontinuance, and have driven her to her real action for the recovery of her estate: such was not the operation, even at common law, of any conveyance which did not require livery of seizin, and where none was made. Ca. Lit. 322 a, 322 b. On this ground, a deed of bargain and sale does not work a forfeiture if made by tenant for years, and for the same reason it does not, unless there be a warranty with assets, amount to a discontinuance, if made by the husband, 3 Thomas's Coke, 124, n. g.
But passing by this view of the subject; the statute of 32 Hen. VIII, re-enacted in this state in 1798 (1 Stat. Law, 582) expressly provides that “no feoffment or other „ , _ i iiiii conveyance <&c. made, suffered or done, by the husband only, of any lands, & c. of the inheritance or freehold of v • v j the wife, during the coverture, shall be or make any dis *292 continuance thereof, &c.; but the wife, or her heirs, &c-shall and may then lawfully enter into all such lands, &c, according to their rights and titles therein, notwithstanding such feoffment or other conveyance.” It is also provided, by another statute of 1Z98 (1 StaL Law,. 140) that all alienations purporting to pass a greater estate than the alienor hath, shall operate to pass so much ©f the estate as he may lawfully convey; but shall not bar the residue of the right or estate, except,.that- if the-alienation be with warranty by the-alienor and his heirs, and- any heritage descend from him to the demandant, then he’ shall be- barred to the value of the heritage so descended.
A'discontinuance oCentry11and'the true owner is-action —-hwhlchi does not accrue-*he htife’ ofU”hf alienor. A dig-defeat the right of entry;- the disseizeemay regain the possession by his entry,, at any years and a dethen11 may’ have-his actio® ¡mmediately.
Under the operation, of these two statutes, the deed of Shackleford passed such estate as he had in the land-But it- did not work a discontinuance of the wife’s estate, or bar her right to enter immediately upon his death,, when the coverture ceased. Nor is she barred by the; warranty,, since she does- not appear to be his-heir,.or to. have received any heritage from him by descent..
It is contended, however, on the part, of the defendant. *n ^® ac:^o:a', that notwithstanding the statute has expressly declared, that the feoffment or other conveyance-, °f the- husband shall be no discontinuance of the estate.of thcwife, yet it has the- effectof a discontinuance until actual entry is made, or so* fiaras-to require an actual entry before an ejectment could: be maintained- But i£ it be a discontinuance,, its-primary and principal effect is to- defeat the right of entry; and it is for this-reason that . . , . , mi j-a discontinuance is a bar to an ejectment. I he distinct¡on¡ between a disseizin and- a discontinuance,, in regard to their effect upon the-mode-by which the-person having ma7 reinstated in his estate, is, that a disseizees may restore himself to>his' possession and estate by his own entry; or if by five years delay and a descent cast, he be driven- to- his action, he may have it immediately;. whereas, in case of discontinuance, which is an. interruption of the- right, and which takes-- place- only where the person whose alienation makes- the discontinuance has himself a freehold, and his. alienee is in by law, the true owner is not permitted to restore his- estate by his own. *293 entry, but must resort to his action; and has no right of action during the life of the alienor — for'during that period, his right to the estate does not accrue. So that, if it be a discontinuance until actual entry, as a discontinuance leaves no right of actual entry, the provision of the statute would be inconsistent, and of no effect. But by express words of the statute, it is no discontinuance; and the wife may enter, and it is impossible, under any construction, to deprive her of the right of entry by mere force of the husband’s alienation. Detheridge vs. Woodruff, 3 Mon. 244. Is it true then,' that an actual entry must be made before ejectment can be brought? We are clearly of opinion tha.t it is not.
The wife whose land is aliened by her husband, her heirs, Sfc. have,, by the statute,, the right to enter upon the land immediately upon his death,— and she may maintain ejectment to recover it, without any previous actual entry; for wherever by entry alone, the owner may acquire the legal possession, ejectment may be brought without an actual entry; the confession of lease, entry and ouster, is-sufficient. And tho’ actual entry is sometimes necessary in England, to rebut the defendant’s title, it is never necessary here, unless it be to prevent the operation ofthestat ute oflimitation*
The statute declares that,notwithstanding the alienation of the husband, the wife may enter, and that such alienation shall not be prejudicial to her. The entry thus saved to her by the statute, must be such entry as will suffice to restore her to the lawful possession of her estate; and in 2 Bibb, 414, Innes vs. Crawford, it is said by the Court, to be the established law, that where by entry alone, the owner may acquire legal possession, ejectment may be brought without an actual entry. In Buller’s N. P. 103, it is laid down that, the confession of lease, entry and ouster is sufficient in all cases, except in the case of a fine with proclamations,, in which case it is. necessary to prove an actual entry. Lord Mansfield, in the case of Wigfall vs. Bryden, 3 Bur. 1897, asserts the same to be the law; and in the case of Goodright vs. Cator, Doug. 485, it is declared by the same learned judge, to have been settled, in 1703, by the opinion of all the judges, upon full deliberation and consideration of all the cases, that actual entry is only necessary to avoid a fine, and that the practice has been so ever since.
' In the case last cited (Doug. 484,) the distinction is stated to be, that when an entry is necessary to complete the landlord’s title, the confession of lease, entry and ouster is sufficient; but that where it is requisite in order to rebut the defendant’s title, actual entry must be made — which is the case when a fine is to be avoided, being then required, as is said in the same case, by positive rule of law, and clearly necessary under the statute of 4 Ann c. 16. *294 But the defendant in the present case had, after the death of Shackleford, no title to rebut. He remained in possession wrongfully, by the mere forbearance of the plaintiff’s lessor, without even the apparent right of possession; and her entry was all that was necessary to vest in her the complete title to the land., Entry was not necessary to give her the right of possession; but having that right saved to her entire by the statute, possession alone was wanting to give her that complete union juris et sesince, which constitutes a perfect or complete title; and this possession she might acquire by entry. Under the authority, therefore, of all the cases which have been referred to, and especially of that decided by this Court, 2 Bibb, 414, we are of opinion, that actual entry was not necessary to entitle the plaintiff to her ejectment. Indeed, taking the action of ejectment as it stands at this day, to be a remedy for asserting and enforcing the right of possession wherever it exists, and is wrongfully withheld, we know of no case in which a previous actual entry can be at all useful or essential, unless it be to preserve the right of action and of possession against the operation of the statute of limitations.
Notice to quit is not necessary,to enable a widow to recover her land conveyedby her husband, during the coverture.
Where a husband aliens his wife’s land, his conveyanee (under the statute)passes all his interest, and the alienee may hold as long as he could have held, i. e. till his death. But, upon that event,the wife’s right of entry accrues, Sr is not barred for twenty years..
*294 The object and effect “of confessing lease, entry and ouster, is to bring the matter to the mere question of the plaintiff’s possessory title,” 3 Bur. 897; — “and an ejectment being a mere creation of the Court, framed for the* purpose of bringing the right to an examination, an actual entry can be of no service.” Doug. 485.
Another objection to the recovery of the plaintiff, is, that there was no notice to the defendant to quit the possession previous to the commencement of the ejectment, or before the demise laid in the declaration. This point was made in the case of Barlow vs. Bell, 4 Bibb,106, which was an ejectment brought by a widow to recover her land, that had been conveyed in fee to the defendant, by her husband during coverture. It was there decided that the alienee of the husband was not the tenant of the wife, and it was said that — even if he were tenant at sufferance, still noticq was not necessary.
The next question to be determined relates to the operation of the statute of limitations. When did the *295 statute begin to run against the wife? and what limitation does it impose? In the case of Baseman's Heirs vs. Batterton, 1 Dana, 433, this question is touched, and although not expressly decided, the opinión is plainly intimated, that in such case, the statute would commence from the death of the husband; till which time, he or his alienee might rightfully hold. This is in accordance with the principle on which the act of limitations operates, as laid down in the case of May's Heirs vs. Hill, 5 Lit. 313. It is there said, “ that there must be a right of “ entry existing at the time of the bar, which can be “ affected; and where the person who is supposed to be “ affected, and those under whom he holds, had no right “ of entry, that right is not tolled.” It has also, on the same principle, been decided in several cases by this Court, that a patentee’s right of entry cannot be barred by lapse of twenty years, unless his patent is twenty years old: that is, unless he has had the right of entry for twenty years. Chiles vs. Calk, 4 Bibb, 554; Stewart vs. Jackson, 1 Mar. 59; Higginbottom &c. vs. Fishback, 1 Mar. 506; Finley vs. Humble, 2 Mar. 571. It would seem, indeed, to be self-evident, that there must be a right of entry to be barred by lapse of time, before time could begin to operate as a bar. The language of the statute is express, and its import does not, as to this point, admit of a doubt. No person who “ may hereafter have right K or title of entry into any lands, &c. shall make entry “ but within twenty years after such right or title ac-w crued, and such person shall be barred from any entry “ afterwards.” During the life of B. C. Shackleford, neither he nor Mrs. Shackleford had any right of entry into the land conveyed to Barnett; for during his life, his deed was operative, and confei'red the legal right of possession upon his grantee. But upon the death of Shackle-ford, the plaintiff’s right of entry accrued, and Barnett’s possession, which had been before rightful, and consistent with the title of Mrs. Shackleford, which was in fact under that title, contributing to uphold and strengthen it, became immediately wrongful, unless held under her; and the statute of limitations could not have commenced running in favor of Barnett and against Mrs. *296 Shackleford, before that time. For then, and not before, had she a right separate and distinct from that of Barnett himself.
Length of possession, under a particular estate, gives no title.— Time never operates as a bar .unless there is an adverse possession; and possession of the inheritance of a feme covert, under a conveyance from the husband alone, is not adverse to her, during the coverture. She may maintain ejectment for the land at any time within twenty years after the coveriture ceases.
A deed, made by but^void^as^to her for want of cement, may be made^effectuerybbyaher, after ;the death of the husband; and,in ■the absence of •direetproof,there might be circumstances from •which such redelivery might be inferred: but nothing that would not constitute ,a valid delivery in the first instance, •or amount to a new grant, would be equivalent to a second delivery; mere acquiescence on her part would not have that effect.
*296 “ Length of possession during a particular estate, as “ a term of one thousand years, or under a lease for “ lives, as long as the lives in being, give no title. But u if a tenant per autre vie hold over for twenty years after w the death of cestui que vie, such holding over will, in u •ejectment, be a complete bar to the remainderman or re- “ versioner; because it was adverse to his title.” Per Lord Mansfield in Doe vs. Proper, Cowper, 217. And no title can be barred by mere length of possession, unless the possession is adverse, — as has been often decided.
But it is contended, that from the date of the deed, Barnett’s possession was adverse; and in support of this position, the case of Detheridge vs. Woodruff, 3 Mon. 244, is relied on. In that case, the Court decide, that the purchaser of the wife's land from the husband, claiming only in right of his wife, may controvert the title of the wife, in an ejectment, brought by her, to recover the land after her husband’s death, he showing that she never had a right of entry. The same case came before this Court a second time (6 J. J. Mar. 368,) when, as it appeared that the purchaser held only the title bond of the husband, and had received no deed from him, it was decided, that he could not, in that case, controvert the wife’s title, by setting up an adversary right in another. But neither the decision in 3 Monroe, 244, nor that in 6 J. J. Mar. 368, asserts the proposition that his possession is adverse to the wife during the coverture. There being then no adverse possession during the life of Shackleford, the plaintiff was entitled, under the general 'limitation, 'to bring her action at any time within twenty years after his death. The saving clause in the statute has in our opinion nothing to do with the case.
Having thus disposed of every question which could have influence in the case, on the hypothesis that the deed continued to be void as to Mrs. Shackleford, it remains only to consider whether the circumstances relied on by defendant, can have the effect of making the deed valid as the act of the plaintiff, or conduce in any *297 ■degree to establish the fact that it is so. The principle insisted on by the defendant, as applicable to this branch ■of -the subject, is asserted in the first instruction asked for by him, and refused by the Court. The substance •of which is, that although the deed was originally void, it might be made effectual by re-delivery after the plaintiff became discovert; and that circumstances showing her acquiescence, after she became discovert, are equivalent to a re-delivery. The first branch of this proposition 'is undoubtedly true: the deed might have been made effectual by a second delivery, after the coverture ceased. Perkins' Treatise, §154. And it may be, that- in the absence of any direct evidence of delivery,, that fact might, like other facts, be proved, inferentially, by circumstances. But as the deed was originally void, as the act of Mrs. Shackleford, for the want of a valid delivery, (¿Perkins'1 T. 154,) we are not prepared to admit, that any circumstances which would not constitute a valid delivery of a deed in the first instance, or which would not amount 'to a new grant, would be equivalent to a second delivery of the deed. If however, it were admitted that, in a case where the deed, though void, is in possession of the grantee, there might be circumstances, even of acquiescence, which would be equivalent to a re-delivery, it would not follow, and indeed could not be seriously contended, that ■any and every circumstance of acquiescence, of whatever •character or degree, and however intended by the party, was entitled to have that effect. This would be not only to destroy all the distinctions heretofore maintained between instruments which are void, and those which are voidable, but to establish a new one of a directly opposite character; the consequence of which would be, that ■a void instrument might be made effectual as a deed, by slighter circumstances than would be required to confirm an instrument which, although voidable, is already a deed.
The unqualified proposition contained in the second clause of the instruction, goes to this broad extent; and were it even sustained to this extent by the case of Goodright vs. Strathan, Cowper, 201, referred toby the counsel for the defendant, we should think it of too dangerous a *298 tendency to be adopted on the authority of that single case. But the case of Goodright vs. Stralhan does not sustain the proposition. The principle properly deducible from that case, is, that there may be circumstances which are equivalent to the re-delivery of a deed; and the Court decides, that the circumstances proved in that case, are of that character. But the circumstances in that case amounted to a positive written recognition of the character and rights of the grantee, -as held under the deed. The plaintiff, the validity of whose deed, ’made during the coverture, was questioned, had not only ■acquiesced in the possession of the grantee, for a long time after the death of her husband, but had also given written directions to her tenants to attorn to him, and had by other positive acts recognized his rights. While therefore it would be with some hesitation, if at all, that we should follow that decision in a case precisely similar, we certainly are not disposed to extend the principle so as to embrace circumstances of a different and decidedly weaker and more equivocal character.
The circumstan•ces proved, and 'offered to be proved in this case, (ante, p.289-90) do not authorize !the conclusion, that there was a re delivery of the 'deed.
These observations render it sufficiently manifest, that in our opinion, there was no error in refusing the instruction asked by the defendant. We are also of opinion, that neither the evidence which was left before the jury when the case was committed to them, nor that which had been received and afterwards excluded, nor that which was offered by the defendant and refused, nor all of it together, proved, or conduced to prove, the redelivery of the deed, or circumstances equivalent to it.
Without recapitulating the evidence, the substance of which has already been stated, it is sufficient to say, that although some of the circumstances proved, or offered to be proved, in this case, are similar to some which existed in the case of Goodright vs. Strathan, others of an important character, are totally wanting. If, therefore,, that case is to be taken as the standard by which to determine what circumstances may be deemed equivalent to a re-delivery, the circumstances of this case, as proved, and offered to be proved, obviously fall far short of the standard. All the facts taken together, do not amount to a re-delivery of the deed, nor are they equivalent to *299 it, in any sense in which we can understand the term. They are not entitled to the same effect as a re-delivery of the deed, or the making of a new grant, and they furnish no grounds for presuming either. We, therefore, cannot say that the Court erred in rejecting or excluding evidence of any of these facts; when all of them, together would not have constituted a bar, positive or presumptive, or authorized the jury to find for the defendant.
In this suit, by a-widow, to recover her land,sold during her coverture, by a deed inoperative as to. her, proof was offered,.that she urged the purchaser to buy it, and said the proceeds were to be, and had been, vested for her use and benefit; but, in the absence of any evidence of such investment in fact,was rightly rejected. Her declarations during the coverture,, were not competent. Nor would' such investment have any effect, unless it was connected with some positive act done by her after the coverture has ceased..
The evidence offered in relation to the appropriation of the proceeds of the land to the plaintiff’s use, during the coverture, does not include the fact that they were secured to her in’ any valid manner, or that she claimed, or continued in the use and enjoyment of them, or consented to such appropriation, after her husband’s death, nor was any proof of these facts actually given or suggested. And as, in our opinion, the appropriation offered to be proved, unaccompanied with either of these facts, was entitled to no bearing whatever upon the rights of the plaintiff, the defendant was not injured by its rejection, were it even competent. The law imposes no obligation upon the plaintiff, as the consequence of such an appropriation as was offered to be proved,, nor gives to it any effect, unless by some positive act done by her, after she becomes discovert, she herself gives effect to it. But to admit evidence of it, as a ground for inferring any positive act injurious to her rights, would be to. give it effect, as a matter of law, and cannot therefore be proper. The declarations and acts of the plaintiff during her coverture, were wholly incompetent: and we are strongly inclined to the opinion that the proof of the appropriation as offered to be made, was equally so. Upon view of the whole case, this evidence was irrelevant. And as the evidence which was excluded, and that which remained before the jury, proved nothing against the plaintiff’s claim, on which a jury could have found a verdict, the second instruction given by the Court, virtually excluding the defendant’s evidence from their consideration, was not erroneous.
The judgment is therefore affirmed.