Sale and others v. Crutchfield, &c.

CASE 40—PETITION EQUITY—MARCH 26.

# Sale and others v. Crutchfield, &c.

### APPEALS FROM THE LOUISVILLE CHANCERY COURT.

1. A DEFEASIBLE FEE.—In 1823 the testator devised land to his son "and his heirs and assigns forever," and if he "shall die without lawful issue," the land "shall go to his sisters in equal portions, and if either or both of them be then dead, to the child or children of such dead sister." *Held*, that the son took a defeasible fee, and not an estate-tail.

"*If the said Edmund shall die without lawful issue.*"—The testator in this case used these words in their plain and natural sense, intending thereby that if his said son at his death should leave "no lawful issue," that the estate devised to him should go to his sisters, etc.

2. A DEMAND OF POSSESSION must be made of a tenant, or *quasi tenant*, before an action for the recovery of the land can be maintained.

But this doctrine does not apply when the party in possession claims the fee, and there was no contract, express or implied, between him and the claimant. (3 Dana, 291; 4 Dana, 264; 5 Dana, 232.)

3. A claim for valuable and lasting improvements on property sued for presents an equitable defense, for the trial of which the case should be transferred to the equity docket. (15 B. Monroe, 70.)

4. Errors as to the forum of the proceedings are waived by a submission of the case without objection. (1 Metcalfe, 593.)

5. A PARTY IS ESTOPPED from claiming property which he has advised or encouraged another to buy, or at the sale of which he has stood by and failed to assert his claim.

But the acquiescence and uniting in a conveyance of a tract of land by one having a contingent interest therein will not estop him from asserting his claim against another who bought without his encouragement other lands in which he had a like interest.

6. WHEN THERE IS A MISJOINDER OF CAUSES OF ACTION IN THE PETITION the court, on motion made before defense, should compel the plaintiff to elect which he will prosecute, and strike out those improperly joined.

But if no motion is made the objection to the misjoinder is deemed to be waived. (Civil Code, sections 113, 114.)

7. CROSS-PLEADING.—There are exceptions to the general rule in chancery practice that one defendant shall not have judgment against a co-defendant, except on cross-pleading asking for relief, and alleging sufficient grounds to authorize it.

8. *Statements of decedent* as to the relations which a female sustained to him are competent evidence on the trial of the question whether decedent died without lawful issue.

JAMES HARRISON, . . . . . . . . . For Appellants,

CITED

Revised Statutes, "Landlord and Tenant," 2 Stanton, 91.
Taylor on Landlord and Tenant, section 64.
Civil Code, sections 111, 342, 776.
Littell's Select Cases, 8, Chesney v. Boyd.
Kent's Commentaries, 39, Lecture, page 483.
3 Johnson's Chancery, 304.
2 Metcalfe, 288, Woolfolk v. Ashley.
3 Bibb, 3, Gist v. Robenit.
1 Bibb, 240, McKegney v. McConnell..
3 Bibb, 9, Brashear v. Burton.
3 Littell 14, Sharp v. Wickliffe.
6 B. Monroe, 370, Ring v. Gray.
8 B. Monroe, 167, Merriwether v. Herron.
3 J. J. Marshall, 626, Turpin v. Markberry.
6 B. Monroe, 287, Scott v. Hall.
8 B. Monroe, 632, Gatliffe v. Rose.
9 B. Monroe, 351, Stemmons v. Duncan.
7 Cranch, 290, Mima Queen v. Hepburn.
1 Wheaton, 7, Davis v. Wood.
2 Parsons on Contracts, 4th edition, page 340.
2 Smith's Leading Cases, 5th American edition, 625, 637, 642.
1 Story's Equity Jurisprudence, 55, 384–388.

| | |
|---|---|
| 7 J. J. Marshall, 322. | 1 J. J. Marshall, 404. |
| 1 Metcalfe, 593. | 3 Dana, 309. |
| 6 Dana, 378. | 1 Dana, 170. |
| 9 Cowen, 274. | 3 Marshall, 181. |
| 9 Hill, 219. | 2 Marshall, 217. |
| 4 Metcalfe, 384. | 1 Monroe, 163. |
| 6 Ad. & Ellis, 469. | 4 Littell, 366. |
| 9 B. Monroe, 559. | 4 Dana, 6. |
| 7 Monroe, 230. | 5 Dana, 167. |
| 5 J. J. Marshall, 569. | 2 Dana, 376. |
| 8 B. Monroe, 542. | 1 Marshall, 246. |

Sale and others v. Crutchfield, &c.

1 Duvall, 115.
6 B. Monroe, 113.                    4 Littell, 371.
3 Dana, 15.                          1 J. J. Marshall, 516.
3 Littell, 350.                      2 J. J. Marshall, 519.
2 Metcalfe, 289.                     3 Monroe, 50.
9 B. Monroe, 559                     3 Dana, 575.
3 Marshall, 202.                     8 B. Monroe, 583.
15 B. Monroe, 73.                    15 Massachusetts, 307.
17 Vesey, 533.                       15 B. Monroe, 515.
14 B. Monroe, 569.                   12 B. Monroe, 255.
16 Mam. 146.                         10 B. Monroe, 205.
19 Ad. & Ellis, 9.                   14 B. Monroe, 311.
21 Mam. 130, 137.                    16 B. Monroe, 421.
18 B. Monroe, 371, Jones v. Letcher.
63 Pennsylvania, McCausland v. Fleming.
10 Metcalf (New York) 53.    1 Monroe, 163.

I. & J. CALDWELL, &rbrace; . . . . . . . . . . For Appellees,
PIRTLE & CARUTH, 

CITED

Story's Equity Jurisprudence, chapter 18.
Spence on Equitable Jurisdiction, 653.
Hardin, 281, Craig v. Baker's heirs.
3 Metcalfe, 588, Nunnally v. White.
5 Littell, 312, May's heirs v. Hill.
5 B. Monroe, 468, Oldham v. Jones.
2 B. Monroe, 318, Haggin v. Haggin.
1 Story's Equity Juris., pp. 432, 485, secs. 508, 509.
6 Dana, 375, Overton's heirs v. Woolfolk, &c.
4 Dana, 311, Underwood v. Brockman.
1 Littell, 85, Webb v. Conn.
6 Monroe, 603, Williamson v. Richardson.
4 Dana, 547.                    2 B. Monroe, 119.
1 Marshall, 247, Scroggs v. Taylor.
1 Marshall, 246, Barton v. Bell.
14 B. Monroe, 176, Phillips v. Johnson.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT.

In March, 1823, Mark Lampton, a citizen of Louisville, published his last will and testament, and shortly thereafter died, leaving three children—a daughter, Minerva, who was at the date of his will the wife of Ephraim S. Stone, Fanny

M. Lampton, and a son, Edmund S. Lampton, all of whom were devisees, and the will was properly probated. The clause in which the testator provided for his son is in the following language:

"I give and devise to my son, Edmund S. Lampton, and his heirs and assigns forever, five negroes (naming them), also eight acres of land, lying and being in Louisville aforesaid, on the western side of my ground, in the range of twenty-acre lots, to be bounded on the west side by Campbell Street aforesaid, which runs through the twenty-acre lot number two, and to extend from said street eastwardly equal distances along said south street, and the southern boundary of said ground to include the said eight acres of land, with all the appurtenances. . . . . . And if the said Edmund shall die without lawful issue, it is my will and desire, and I do hereby direct, that the estate herein devised to him shall go to his sisters in equal portions, and if either or both of them be then dead, to the child or children of such dead sister, the children taking the share of the dead parent."

After the death of the testator his daughter, Fanny M., married Thomas F. Crutchfield. And afterward E. S. Stone, the husband of Minerva, died, leaving her and her son, E. M. Stone, surviving; the widow then married B. H. Minter, by whom she had a son, F. Marion Minter. Some years thereafter Mrs. Minter died, leaving her sons, E. M. Stone and F. Marion Minter, her only heirs. After having married, F. M. Minter died, leaving two infant children, Mary Sallie Minter and Edward Law Minter, his only heirs. After the death of his sister, Minerva, and her son, F. M. Minter, Edmund S. Lampton died, as is alleged, in 1865, "without issue."

In December, 1866, this suit in equity was brought by Crutchfield and wife against E. M. Stone and the infant children of F. M. Minter, heirs of the testator's daughter, Minerva, and quite a number of other persons, to whom it is

alleged the said Edmund S. Lampton had sold, either directly or mediately, said eight acres of land devised to him by his father, having divided said land into small lots of about thirty-five feet front, and running back from one hundred and fifty to two hundred feet to streets and alleys which he had laid out, alleging that all those possessed of lots within the boundary of said eight acres claim and hold them under conveyances from said Edmund S. Lampton, and that by the terms of his father's will, through which he derived title, he could only pass to his grantees an estate during his life thereto, and that since his death the persons in possession have unlawfully withheld them from the plaintiff, Fanny Crutchfield, and defendants, Stone and Minters; and they pray for a partition thereof, that one half of said eight acres be allotted and set apart in proper form by metes and bounds, or that an equal half of the lots be designated and set apart to the plaintiff, Fanny, and the other moiety to whom the same may belong. They pray that the persons in possession be compelled to surrender the same to them, for an account of rents and profits, and for general relief.

Stone answered, and made his answer a cross-petition against the defendants, the Minters, and unites with the plaintiffs in the prayer for relief against the persons in possession, claiming a moiety of the lots sued for, except such as he admits he joined E. S. Lampton in the conveyance of, which he designates by their respective numbers; the plaintiffs also admit they joined E. S. Lampton in the conveyance of some lots described in their petition by their numbers, and disclaim any right to them.

It should be observed that Stone, by his cross-pleading, claimed one moiety of the property sued for, to the exclusion of the Minters; this claim they controverted by their answer, and on the trial of that branch of the case in the court below a judgment was rendered favorable to them; but, on an appeal

to this court by Stone, that judgment was reversed, and since then the Minters have taken no part in the litigation.

In the answer of the defendants they controvert the death of Edmund S. Lampton, and say if he be dead they deny that he died without issue; admit severally that they are in possession of the respective lots or parcels for which they are sued, and claim to hold the same rightfully. They aver that they are purchasers in good faith, having paid an adequate price, and believed that they were getting a good and indefeasible title; some of whom purchased directly from said Lampton, and some from his vendees, immediate or remote; and they allege that all who purchased directly from him took counsel of persons learned in the law, and were assured by them that the title was good; and hence, confiding in the opinion of their legal advisers, they made the purchases. They allege that they, and those under whom they claim, have had a continuous possession adverse to appellees for more than fifteen years before the commencement of this suit, and plead and rely upon time as a bar to the action. They insist that a joint suit can not be maintained against them, claiming as they do severally different lots, separated by distinct metes and bounds, and plead to the jurisdiction of the Louisville Chancery Court. And finally they allege that they purchased their respective parcels for valuable considerations, without notice of any defect in the title; that they entered in good faith, and made valuable and lasting improvements on said lots, for which they pray to be remunerated if it should be adjudged by the court that their titles are defective, and for that purpose made their answers cross-petitions.

The case was referred to the master to take an account of rents and profits, and of the value of lasting improvements made by the tenants, and report the result of his investigations to court, who made two or more reports, to which there were exceptions by defendants. Finally judgment was rendered

in favor of Mrs. Crutchfield and Stone against the defendants severally for the lots in their possession, except such as they admit they joined Lampton in the conveyance of, subject in many instances to the payment of the value of improvements adjudged in their favor. From that judgment twelve separate appeals are prosecuted on the same record, of which that of Sale v. Crutchfield and wife, &c., stands first.

A demurrer was filed to the petition, which was overruled, and it is insisted here by the learned counsel for appellants that the court erred in that ruling, because the petition fails to aver a demand or notice to surrender possession before the commencement of the suit; and 7 J. J. Marshall, 322, and 15 B. Monroe, 73, are referred to as authorities to sustain that position.

The case, as we suppose, in 7 J. J. Marshall intended to be cited is Harle v. McCoy. (*Ibid.* 318.) By an examination of that case it will be seen that McCoy contracted to sell the lot to Harle for which the suit was brought; Harle took possession *under* the executory contract, with the assent of McCoy, and was to pay him in two installments for the lot. In that case this court decided that one who enters on land under an executory contract for the purchase of it can not be evicted by *his vendor*, unless he shall by some act have converted his possession into a tortious holding, as by denying the title of the landlord, etc.

So in Smith v. Moberly and wife (15 B. Monroe, 70) it was shown by the proof that Smith entered into the possession of the land under a parol agreement with Moberly to purchase it; and this court held, as in the other case, that, as Smith entered lawfully, his possession was not tortious until he had done some act to make it so, or unless a notice to quit or a demand of possession had been made, and he had refused to surrender. This is the law in the class of cases referred to, and perhaps has been for time out of mind. We probably adopted it from

England.   The reason for the rule is that the tenant holds under the owner by some contract, either express or implied. But no such rule ever prevailed, and the doctrine never had any application to a case like the present, where there never was any express contract between the claimants and the tenants in possession, and no grounds for implying such a contract; but, on the contrary, the tenants claim the fee to be in themselves, and deny that appellees ever had title.   This doctrine is fully and ably discussed in Miller v. Shackleford, 3 Dana, 291; same v. same, 4 *ibid.* 264; Shackleford v. Smith, 5 *ibid.* 232.   Upon authority therefore neither demand nor notice were necessary.

On motion of the defendants below the venue was in May, 1867, changed to the Jefferson Court of Common Pleas, where but few steps were taken—an answer filed, and a motion or two made by one of the attorneys for the defendants.   A motion was then made by the attorneys for appellees to transfer the case to the Louisville Chancery Court, which the court sustained, and ordered the transfer to be made, to which ruling appellants did not except; but they now insist that the proceedings should have been by ordinary, and for that reason the judgment should be reversed.

So much of the answers as set up a claim for valuable and lasting improvements on the property sued for presented an equitable defense (Smith v. Moberly, *supra*); and if the suit had been brought in ordinary, the issues made on that part of the answers would have been properly triable in the manner prescribed in equitable proceedings; and for the trial of these issues it would have been proper to have transferred the case to the chancery court; and if the equitable defenses had been adjudged insufficient to defeat the action, the court should have referred the legal issue, of whether or not appellees were entitled to the possession of the land, to the decision of a jury, unless a trial by jury had been waived.

Section 342, Civil Code, provides that issues of fact arising in actions by ordinary proceedings for the recovery of money, or of specific, real, or personal property, shall be tried by a jury, unless a jury trial is waived.

This suit, as we have before observed, was brought in equity; and therefore, unless a motion was made to transfer it to the proper forum to try the legal issues, a court of equity might properly proceed to try the cause; and if it be submitted, as was done in this case, without objection, errors as to the form of the proceedings are waived. (Frazer, &c. v. Naylor, 1 Met. 593.) But if there was any error in the court below as to the proceedings adopted in the suit, by failing to except to the ruling of the court of common pleas ordering a transfer of the case to the Louisville Chancery Court, that error was waived. (Section 12, Civil Code.)

It is stated by Stone, in his answer and cross-petition, that he released to the original purchasers all his title to lots Nos. 2, 3, 6, 7, 44, 45, 48, 49, 55, 54, 100, 101, 96, and 97, and does not assert any claim to these lots, or any of them, under the will of his grandfather, and admits that his mother joined her brother, Edmund S. Lampton, in the conveyance of lots 57, 58, 59, and 60 to the purchasers; but submits as matter of law to the court whether, as heir to his mother, who died before her brother, he was not, on the happening of that event, entitled to one moiety of said lots; but that question the court below very properly adjudged against him. Lots Nos. 6, 7, 12, and 45 he claims under deeds from other parties, and not under the will; and F. M. Minter sold lot No. 41 to Vanhice, and Stone undertook in writing that said F. M. Minter should convey the same when he arrived at twenty-one years of age, and that he acted as the attorney in fact of E. S. Lampton and wife to sell some few lots within the boundary of the eight acres held by said Lampton; and appellants insist that these acts on the part of Stone estop him from claiming any portion

of the residue of the lots, he having disclaimed any interest in those he either joined in the sale of or sold as attorney.

As to those lots Stone joined his uncle in the sale of, and those he sold as his attorney in fact, he is estopped *by his deeds;* but the estoppel, we apprehend, extends no further than the conveyances. If he is estopped as to the others, it is not by deed, but must be by matter in *pais;* and we do not perceive how anything he has done can so operate. We know of no adjudged case in which it has ever been held that a party who joined in the conveyance of one distinct parcel of land, to which he had a contingent interest, to one individual on some consideration, or even without any consideration, would be estopped to set up claim to another separate parcel of land held by a different individual, to whom he had given no encouragement to buy, and perhaps may have been wholly ignorant at the time of any such transaction.

If that doctrine were to prevail, it would be hazardous for the owner of real estate to sell any part of it unless he sold the whole. The doctrine has never been carried further than to estop the party from claiming property he had advised or encouraged another to buy, or being present and seeing one buy property to which he had title or some claim, and then failed to assert it, but acquiesced in the sale.

We can not concur in the views of counsel therefore that appellee Stone has deprived himself by anything he has done of the right to claim an interest in all the lots except those he or his mother joined in the conveyance of, and those he sold as attorney in fact of Lampton.

But it is objected that as each lot is held as a distinct and separate parcel by appellants respectively, a joint action can be maintained against them. In Dean, &c. v. English (18 B. Mon. 132) this court held that a misjoinder of parties can not be taken advantage of by demurrer; and unless where such objection exists, either as to plaintiffs or defendants, the party

who could take advantage of the objection moves to strike out the names of the parties improperly joined, the objection is waived. No such motion was made in this case. The same ruling was made in Yeates v. Walker, 1 Duvall, 84. And if there was a misjoinder of causes of action in the petition, by section 113, Civil Code, it is made the duty of the court, on motion before defense, to strike out any cause or causes of action improperly joined; and unless the motion is made as therein provided by section 114 (*ibid.*) the objection shall be deemed as waived. But here appellees, having separate causes of action against a number of persons, brought one suit against all of them, which appellants insist can not be done. Appellees had a separate cause of action against each defendant holding a distinct lot, and before filing their answers defendants could have compelled the plaintiffs below to elect which they would prosecute, and had the action against all except one defendant dismissed; but having filed their answers and failed to make the motion to compel plaintiffs to elect, they waived their right, and it is too late now to object.

It is insisted that as appellee Stone did not join as plaintiff in the suit, but was a defendant, and failed to make his answer a cross-petition against the defendants in possession of the various lots, and failed to sue out process against them, the court below erred in granting relief to him.

The general rule in chancery practice is, that one defendant shall not have judgment against co-defendants except on cross-pleadings asking for relief, and alleging sufficient ground to authorize it, because otherwise the end of all pleading might be frustrated by adjudicating between associates and not antagonists in court, in favor of a party who had not sought or even intimated a wish to obtain any such interference, and as to matters not only unlitigated, but never presented in any form for litigation. But this rule extends only so far as the reason for it applies. It does not apply to a suit in chancery

by one distributee against an administrator and co-distributees, or one legatee against his co-legatee and the executor, for ascertaining and distributing a fiducial fund in which all the distributees and legatees have a common interest derived from the same source. (Caldwell's executors v. Kinkead, &c., 1 B. Monroe, 228.)

In this case the original petition sought a partition of the lots to the one half of which the plaintiffs asserted a title under the will of testator, and an account of rents and judgment for possession. Such judgment could not be appropriately rendered without finally adjusting the interest of the others claiming to be devisees. Stone in his answer prayed for such final adjustment, and as he will be concluded by the judgment, the appellants have no just cause to object, because they were not formally made defendants to a cross-petition, and especially as their answers to the original petition are as available to them against Stone as if they had been answers directly to his cross-petition, and they seem to have been filed with that view, and were during the progress of the case treated as defenses to both claims, and no prejudice resulted to appellants thereby.

From the evidence in the case the conclusion is irresistible that E. S. Lampton died leaving no issue. One witness proves that the woman with whom he lived had the child by her first husband, whom Lampton took to live with him when he and her mother commenced cohabiting together; and a number of witnesses prove that they both said the child was not his, in repeated conversations, commencing perhaps as early as 1831, before he had sold any lots in controversy, and always making the same declarations in relation to the parentage of the child, to the latest period of his life, whenever he spoke on the subject. In passing upon the question evidence of the statements or acknowledgments of Lampton as to the relations which the individual sustained to him is competent. (1 Green-

leaf on Evidence, section 103.)   She was not called by his
name, and was never recognized by him as his child.

But disregarding any statements made by decedent after he
begun to dispose of the lots in controversy, the fact is satis-
factorily established by other evidence that he died without
issue; and it is much more questionable whether he ever was,
in fact, lawfully married.   Even therefore, if the exceptions
to the depositions had been overruled by the court, and the
opinion overruling them excepted to, appellants would not
have been prejudiced thereby, as the evidence was sufficient
without such statements.

This brings us to the consideration of the main question in
the case, and that is, What estate in the eight acres of land
did E. S. Lampton take under the will of his father?   All of
the will that is necessary for the solution of the question has
already been quoted.   The words "if he should die without
lawful issue" then the estate to go to his sisters, and words of
like import contained in other wills, have been frequently
construed by this court.   The question arose in the case of
Hart v. Thompson's adm'rs and heirs (3 B. Monroe, 482) on
the construction of the following words in the will of Na-
thaniel Hart, sr.: "My will and desire is that all my estate,
both real and personal, be equally divided among my said
nine children, if then living, or their lawful heirs if dead; and
if either of my nine children should die without heirs of their
body lawfully begotten, their part so allotted and given to
them, as aforesaid, be equally divided among my other chil-
dren then living."

This will was made in 1788, and shortly thereafter pro-
bated.   Simpson Hart, a son of the testator and a devisee,
sold a tract of land allotted to him under the will, and after-
ward died childless.   In a controversy between a brother of
Simpson Hart and the purchaser about the land the purchaser
contended that under this clause of the will his vendor took

an estate in fee-tail, which by the statute then in force was converted into a fee-simple estate; that the conditions annexed thereto restraining alienation were abrogated, and Simpson Hart became invested with a pure and absolute fee, with power of unlimited alienation.

After a review of a number of authorities on the question this court said: "Whenever there is, as in this case, a clear indication of an intention on the part of a devisor to pass a defeasible fee only to the first devisee, with a limitation over to others then living, at the death of the first devisee without issue or heirs of his body, so as to preserve his estate to his children, that such construction should be given to the devise as to carry out the object and intention of the devisor, and as would effectuate the purpose of the devisee." And it was adjudged that Simpson Hart took as an executory devise a defeasible fee, and, dying without issue, the estate passed to his surviving brothers and sisters.

That case was decided in 1843, and has been followed by this court in numerous cases since. In Daniel v. Thompson, &c. (14 B. Monroe, 533) the question was before this court on the construction of a similar provision of Clifton Thompson's will, made in 1828, or rather to a codicil thereto made in 1831. In that case Judge Marshall, delivering the opinion of the court, the authorities, both English and American, are most elaborately reviewed; and, after referring to a number of cases decided previously in this state, it is said in none of these cases has an estate-tail been raised by implication upon the words "dying without issue," whether the first devise was for life or in fee, or without additional words, or whether it devised lands, or slaves, or personalty, or all by the same words.

Here we can not doubt that the testator, when he said if his son should die "without lawful issue," used the words in their plain and natural sense, intending thereby that if his

said son at his death should leave "no lawful issue" that the estate devised to him should go to his sisters. There is nothing in the will showing a contrary intention. We therefore concur with the court below that E. S. Lampton took the estate subject to be defeated by the event that has happened, and that appellees thereby became entitled to it.

On the subject of rents, appellees' title accrued when E. S. Lampton died, and rents commenced from that period. And the allowance for improvements is as favorable to appellants as they had a right to ask them; nor do we discover any error in the adjustment of costs.

Wherefore the judgment is affirmed.