## Blackburn's heirs, &c. *vs* Pennington.

CHANCERY.

### APPEAL FROM THE LINCOLN CIRCUIT.

Case 57.

*Femes covert. Conveyances. Estoppel. Lien.*

This opinion was delivered by JUDGE SIMPSON on the 6th day of October, 1847, but suspended by petition for re-hearing until the 21st January, 1848, when the petition was overruled.

January 21.

JAMES BLACKBURN and wife, on the 10th of March, 1813, conveyed a tract of land in Lincoln county, to

Case stated.

Edward Pleasants, who afterwards sold and conveyed the same land to Ephraim Pennington.

Blackburn and wife removed to Arkansas in 1820, where he afterwards died, leaving his wife living, who died in 1840. The tract of land sold and conveyed by them, belonged to Mrs. Blackburn, and since her death her children brought an action of ejectment for it in the Lincoln Circuit Court, relying for success on the ground that the deed made by Blackburn and wife was insufficient to pass her title, the certificate of her acknowledgment not being such as the law requires.

Pennington then filed his bill in chancery, to perfect his title to, and to be quieted in the possession of the land. He relies mainly on three grounds for relief:

First. That the certificate by the clerk, of the acknowledgment of the deed by Mrs. Blackburn is sufficient, and such as is valid in law.

Secondly. If the certificate be defective, he has a right, under the act of 1831, to come into chancery, to have the defect remedied, upon a proper case being exhibited.

Lastly. That Mrs. Blackburn in her lifetime, after her husband's death, ratified the deed made by her husband and herself, stated that she intended to abide by and confirm it, and would never claim in opposition to it— that in consequence of those representations, he paid the last instalment of the purchase money that he owed to his vendor, Pleasants, which he would not otherwise have paid, and that she thereby estopped herself and those deriving title from her, from setting up and asserting claim to the land.

So far as the complainant seeks relief upon the first ground relied upon, it is contended that a Court of chancery has no jurisdiction, that if the deed be valid, having the legal title, his remedy is in a Court of law.

The certificate of the clerk on the deed of Blackburn and wife to Pleasants, is in the following form:

The certificate of the clerk upon the deed in question.

" KENTUCKY, LINCOLN COUNTY, SCT:

"I do certify, that on the 10th day of March, 1813, this indenture of bargain and sale from James Blackburn, and Jane his wife, to Edward Pleasants, was pre-

sented to me in my office, and acknowledged by the said James Blackburn, and Jane his wife, to be their act and deed, the said Jane being privily examined as the law directs. Whereupon I admitted the same to record in my office.　　　　　Thomas Helm, c. l. c. c."

The officer who takes the acknowledgment of a deed made by a married woman, is required by the statutes on the subject of conveyancing, to certify the fact of the privy examination of the *feme*, and her declaration that she freely and willingly executed the deed. If these two facts are certified, or if the language of the certificate, although not expressly indicative of, necessarily imports their accurrence, the authentication should be regarded as sufficient. The fact of privy examination being expressly set forth in the foregoing certificate, that it was made as required by the statute, which is merely directory to the officer on the subject, should be presumed, even had it not been certified that it was done as the law directs. But there is no statement in the certificate, that the acknowledgment by the *feme* was voluntary, nor is there any thing in the language of the certificate, from which it can be necessarily implied. It is not sufficient that it might be inferred from the fact of privy examination, the sole object of which is to explain the nature of the instrument, and to ascertain whether, when it is understood by the *feme*, her execution of it is voluntary. The statute requires the voluntary acknowledgment to be certified, it must not therefore be a deduction from some other fact which is certified, but if deducible at all, it must be from the language of the certificate itself. This requisition of the statute is imperative, and cannot be dispensed with. The certificate to this deed is therefore fatally defective. It is consequently unnecessary to determine, whether if the deed were valid, the Court would have jurisdiction to grant the complainant relief on this ground.

The next question presented, is in relation to the application of the statute of 1831 (1 *Stat. Law*, 450,) to a defective certificate like this one. The 11th section of that statute is relied upon as sufficiently comprehensive to embrace this case. That section, however, is

**[Margin notes:]**

Blackburn's Heirs, &c. *vs* Pennington.

The statute requires that the clerk shall certify that a *feme covert* was privily examined, and shall state that she *willingly* acknowledged the deed, or words of like import. It is not sufficient that it might be inferred that the acknowledgment was voluntary; it must be certified that she acknowledged it voluntarily, or that the acknowledgement was voluntary.

The 11th section of the statute of 1831, (1 *Statute Law*, 450,) applies by its terms exclusively to defects in conveyances by bar-

on and *feme*, du-
ly executed in
every other res-
pect, except that
a *dedimus potes-
tatem* did not is-
sue in the first
instance, any
other defects are
not provided for.
The enacting
clause cannot be
enlarged by the
allusions in the
proviso.

confined by its very terms, to deeds made by *baron* and *feme*, duly executed in every respect, except that a *dedimus potestatem* did not issue in the first instance. It authorizes the defect in this particular to be remedied by a proceeding in chancery. Any other defect in the authentication of a deed executed by husband and wife, is not provided for in the section. The enacting part of the section cannot be enlarged by the language of the *proviso*, which contains an allusion to other defects in taking the privy examination, and which was no doubt inserted inadvertantly. The case of *Hiatt's heirs* vs *Calloway's heirs*, (7 *B. Monroe*, 178,) has been referred to as authorizing the Court to grant the relief sought for by the present complainant. That case, as was decided by this Court, was not embraced by the 11th section of the act of 1831, but as the clerk of the County Court had made a mistake in recording the certificate on the original deed, a Court of chancery had power to have the mistake corrected, by decreeing a release by the heirs to the complainant, of all claim or title to the land contained in the deed. There is no resemblance between the two cases. Here the effort is to supply by parol evidence, a fact, viz: the voluntary acknowledgment of the deed by the *feme*, which ought to have been shown by the certificate of the proper officer, and which cannot be legally manifested in any other mode. The statute of 1831 does not apply to a case of this kind, nor has the Chancellor any power to supply this defect in the authentication of the deed.

Where a *feme covert* conveyed but by a defect-
ive conveyance, and afterwards when *sole* indu-
ced a sub-pur-
chaser to pay out money by repre-
senting that the title she had con-
veyed was valid, and after her death, her heirs seek to avoid the conveyance and oust the sub-pur-
chaser: Held that the heirs of the

This brings us to the last and most important question in this controversy, the matter of estoppel, which is set up and relied upon by the complainant. If Mrs. Blackburn, by representations made by her and communicated to the complainant, induced him to believe that the title which he had was good, and that she would never set up any claim to the land, in consequence of which he paid to his vendor the last instalment of the purchase money, which he would otherwise have withheld, how far should her claim, or the claim of her heirs to the land, be affected by these circumstances? The complainant had purchased the land, obtained a con-

veyance, and paid all the purchase money for it, except the last instalment. Her conduct did not induce the purchase, nor any act in relation thereto, on the part of the complainant, only the payment of that amount of the purchase money. The complainant has not manifested the existence of any probable injury to himself resulting from her conduct, beyond the loss of this payment made by him. On what principle then, is her heirs to be required to surrender up their whole claim to this land? If they be in equity, liable to the extent of the injury sustained by the complainant through the act of their mother, that liability could only operate as an estoppel that far. It could not operate to divest them of their title to the whole land, but would, at most, only give to the complainant a lien upon the land to the extent of the injury sustained, which lien the Chancellor might enforce at his instance. The evidence is wholly insufficient to establish a ratification of the deed by Mrs. Blackburn. Indeed we have had considerable doubt on the testimony in relation to the representations attributed to her. There is but the testimony of a single witness on this subject. He does not state in his deposition the time the conversation with her which he details occurred. He may, however, have made but one trip to Arkansas for the purpose of seeing her, and yet may not have communicated to the complainant her representations until after the institution of his first chancery suit. It is evident that some cause operated on the complainant inducing him to dismiss his suit and pay the money which he had enjoined. We cannot conceive of any other but the one assigned by himself. We have, therefore, not however without some hesitation, come to the conclusion, that the statements attributed to Mrs. Blackburn, were made by her and made known to the complainant, and superinduced the dismissal of his suit and the payment of the money. This conclusion, however, will only aid the complainant to the extent of the last payment of the purchase money made by him. That far he has sustained an injury, it being evident that any money he may be able to obtain from the estate of Edward Pleasants, deceased, will not re-

BLACKBURN'S HEIRS, &c. vs PENNINGTON.

*feme*, in equity, should reimburse the subpurchaser the amount paid out in faith of the representations of the *feme*, and as they were nonresidents, that the sub-purchaser have a lien upon the land.

pay him the amount he had previously paid on the pur-chase. To that extent he has a lien on the land, which may be enforced by the Chancellor. He will be entitled to interest on the money from the time it was paid, and will have to account for rents from the commencement of the action of ejectment by the defendants, which will be for the period of about five years by the time the Court below is prepared to decree a change of posses-sion.

The heirs of Blackburn are also liable to the com-plainant on the warranty contained in their father's deed to Pleasants, so far as they have received assets. There is nothing in the objection taken to the deed made by Blackburn, that it was executed without a seal. It con-tains the letters L. S. at the end of the name, which is certainly equivalent to a scrawl, and nothing more was required to the validity of a deed when this one was executed. But whether good or not, as an executed instrument, is immaterial in this case. The covenant of warranty would be equally obligatory, if the writing was not under seal, it having been executed since the passage of the act of 1812, placing unsealed writings containing executory contracts, upon the same footing with sealed instruments. And as said heirs are non-residents, the land is also bound for this liability. When the amount due to the complainant is ascertained accord-ing to the principles here settled, unless paid by the de-fendants, a sale of so much of the land in controversy must be decreed as may be necessary to pay it. And the possession of the residue of the land decreed to the defendants, the heirs of Jane Blackburn. If the rents due to the heirs should exceed the complainant's de-mands, they will be entitled to a decree for the excess, and in that event, for the whole land. In estimating the rents, any necessary improvements made on the land during the time for which they are allowed, should be taken into consideration and deducted from the amount.

The objection to the deposition of Edward Pleasants, we deem untenable. The release which was given him rendered him competent.

. The decree of the Court below perpetuating the complainant's injunction and dismissing the cross bill of Blackburn's heirs, is reversed, and cause remanded for further proceedings in conformity with this opinion.

*J. H. Owsley and J. M. Smith* for appellants: *Turner, Kincaid, and Robertsan & McKee* for appellee.