| 8bm177
|f121  318|

Gill and Simpson *vs* Fauntleroy's Heirs, Same *vs* Same.  EJECTMENT.

APPEAL FROM THE MADISON CIRCUIT.

*Case* 48.

And Fauntleroy's Heirs *vs* Ramsey; Same *vs* Porter; Same *vs* Dunn; Same *vs* Simpson, &c.; Same *vs* Gill; and Same *vs* Wilson, &c.

WRITS OF ERROR TO THE MADISON CIRCUIT.

*Conveyances. Husband and wife. Joint tenants. Parceners. Limitation.*

JUDGE BRECK delivered the opinion of the Court.—Judge Simpson did not sit in this case.  *December* 15.

THESE cases were all ejectments, brought upon the joint and several demise of the heirs of Margaret Fauntleroy and the devisees of Anne Harrod. The law and the facts, the latter having been agreed by the parties, were submitted to the Judge in the Court below, who rendered judgments for the plaintiffs in the two cases first named, for part of the land in contest, and for the defendants in the residue. *The cases stated as agreed, and the decision of the Circuit Judge upon the law and facts.*

In the two first cases the defendants have appealed to this Court, and cross errors are assigned by the plaintiffs, now appellees. The other six have been brought up by the plaintiffs by writs of error.

As the same title is relied upon and the same questions in fact arise, in each case, they will all be considered together.

The lessors of the plaintiffs claim title under three patents, embracing in the aggregate, about three thousand acres of land, which emanated from the State of Virginia in 1782 and 1783, to James McDonald, heir at law of Patrick and James McDonald. In 1785 Anne McDonald, the mother of the patentee, married James Harrod. In the fall of 1787, the patentee died intestate and an infant, leaving his mother and his half sister, *The character of the claim of title by lessors of the plaintiff, as heirs of Mrs. Fauntleroy, and devisees of Mrs. Harrod.*

Margaret Harrod, daughter of the said Anne, his only relatives and heirs at law.

In 1792, James Harrod departed this life.

About 1802, said Margaret, being in her seventeenth year, married John Fauntleroy. She lived till 1841 and died. Her husband survived her till 1845, when he died.

Anne Harrod died in 1843, having first made and published her last will and testament.

These suits were commenced in 1843, by the heirs of Mrs. Fauntleroy and the devisees of Mrs. Harrod.

Among other facts it is agreed, that John Fauntleroy, the husband of said Margaret, never was in possession of any part of the land in controversy, in such a way as to constitute him a tenant by the courtesy.

The defendants claim the land under deeds from Fauntleroy and wife, and by possession, adverse to Mrs. Harrod and her devisees, for more than twenty years.

The validity of these deeds will first be examined.

The deeds, under which Gill and Simpson, appellants in the two first cases, claim, bear date in 1814 and 1813. The first purports to be from Fauntleroy and wife to James George, for one hundred acres. Its validity as to Mrs. Fauntleroy, turns exclusively upon the following certificate:

"MERCER COUNTY, SCT.

The clerk's certificate upon the deed to James George adjudged insufficient.

"This day John Fauntleroy and Margaret, his wife, a party to the within indenture, personally appeared before me, and acknowledged the same to be their act and deed: and the said Margaret, separate and apart from her said husband, acknowledged the said indenture to be her act and deed, and relinquished her right of inheritance to the land in said indenture mentioned, and also relinquished her right of dower, as the law directs.

"Attest,                    THO. ALLEN, C. C."

To constitute a valid acknowledgment of a feme covert, so as to pass her right in land, it is indispensable that she be privily examined, and upon such exam-

To constitute a valid acknowledgment under our statutes, by a *feme covert*, of a deed for the conveyance of land, it is indispensable, as has been repeatedly decided by this Court, that she should be privily examined, and upon such examination, should declare she freely and willingly executed the deed. It is equally indispensable that the certificate of the clerk or examining

officer, should state these material facts, either in express terms, or in language from which they may be clearly implied.

The certificate before us, in reference at least to one of these essential requisites, is considered defective, and fatally so. It does not expressly state, nor in terms of equivalent import, that the *feme* declared she freely and willingly acknowledged the deed or relinquished her right of inheritance. The law is equally imperative in requiring this fact to be certified, as the fact of privy examination. And a mere inference from the fact of acknowledgment upon such examination, that the declaration was made, is insufficient, and does not satisfy the requisition of the statute in that particular.

It is true some stress is laid upon the concluding words in the certificate, "as the law directs." Whether that expression refers merely to the relinquishment of dower or includes the acknowledgment of the deed and the relinquishment of her right of inheritance, is not material, as in either case it would be wholly unavailing to give validity to the certificate.

The clerk is a ministerial not a judicial officer in such cases, and whether the *feme* relinquished her title in the way the law required, it was not his duty or province to decide. It was his duty to state the facts in regard to her acts and declarations, and whether they amounted to a compliance with the legal requisitions and were sufficient to pass her title, it would devolve upon the Judge or the Court to decide. If she declared, upon privy examination, that she freely and willingly executed the deed, it was his duty so to state in his certificate. And as it does not expressly, or in language clearly implying it, contain that fact, the deed as to Mrs. Fauntleroy, was clearly invalid, and as her husband, according to the agreed facts, had no estate by the courtesy, opposed no obstacle to the plaintiff's recovery upon the demise of her heirs.

In the second case the defendants relied upon a deed from Fauntleroy and wife to Stapp, made in 1813, but the certificate of acknowledgment as to Mrs. Fauntleroy, being equally defective as the one first disposed of, the

*Margin notes:*

ination should declare that she *freely and willingly* executed the deed, and the certificate of the clerk should state these material facts, either in express terms or in terms from which they may be clearly implied. And

As clerks in taking the acknowledgment of deeds act ministerially, it is not sufficient that they certify that the acknowledgment was *according to law*; but they should state the acts done and declarations made.

The certificate on the deed to Stapp declared to be defective also.

deed formed no obstacle to the plaintiff's recovery also, upon the demise of her heirs in that case.

In the case against Ramsey, the defendant relies upon a deed bearing date in 1817, which it is contended is not so authenticated and recorded as to pass the title of Mrs. Fauntleroy. The certificates upon it are as follows:

"MERCER COUNTY, SCT:

The certificate upon the deed to Ramsey held to be valid: (3 *Dana*, 111: 5 *B. Monroe.* 481.)

"I, THOMAS ALLEN, clerk of the County Court aforesaid, do certify that John Fauntleroy and Margaret his wife, this day came before me in my office, and acknowledged the within instrument of writing to be their act and deed; and the said Margaret being by me examined separate and apart from her husband, freely and voluntarily relinquished her right of dower and inheritance, as the law directs. Given under my hand this 21st day of October, 1817. THOMAS ALLEN."

"GARRARD COUNTY, SCT:

"This indenture of bargain and sale from John Fauntleroy and wife, was exhibited in my office the 8th day of November, 1817, and the same, together with the certificate thereon endorsed, is truly admitted to record.

"Test, BENJ. LETCHER, *Clerk.*"

The certificate of acknowledgment shows that the wife was privily examined by the clerk, and upon such examination, that she freely and voluntarily relinquished her right of inheritance. It does not vary materially from the certificate in the case of *Nantz* vs *Bailey*, (3 *Dana*, 111,) and upon the authority and reasoning of that case, and also of the case of *Gregory's heirs* vs *Ford*, (5 *B. Monroe*, 481,) is deemed valid and sufficient to pass the title of Mrs. Fauntleroy to the land embraced in the deed.

But it is also insisted that the certificate in regard to the recording of the deed, is insufficient.

To pass the title of a *feme covert* to land, it is certainly true, as contended, that the certificate of her privy examination and relinquishment, as well as the deed, must be recorded, or deposited in the proper office for record, within the time required by law for recording

deeds, and that the record alone is competent to show these facts.

The objection made to this certificate is, that although it shows when it was *exhibited* in the office of the clerk, yet it does not show when it was handed to him or lodged in his office for record, or actually recorded. It would no doubt have been more strictly in conformity with the usual phraseology in regard to such certificates, had the clerk stated in express terms that the deed was produced to him, or was lodged or deposited in his office for record on the 8th November, 1817. But it seems to us this certificate cannot, as it is, according to any reasonable intendment, be construed to mean any thing else. It shows that the deed was in the proper office in due time, and had been, together with the certificate thereon, truly admitted to record. It does not appear to have been *exhibited* for any other object, except for record, or that it was ever produced, lodged or deposited in the office, or with the clerk, at any other time. *The certificate thereon* was obviously the certificate of acknowledgment, which appears from the copy before us, to have been recorded with the deed.

It was upon the deed, it is manifest, when the deed *was exhibited* in the office, or according to a fair and reasonable construction of the expression, was lodged or deposited in the office for record. Whether the deed and certificate were in point of fact spread upon the record book on that day, is not important. They are considered as of record when in the office for that purpose. Nor is there, in our opinion, any thing in the terms of the certificate, as supposed by counsel, inconsistent with the fact that they had been actually recorded, or might have been, on the day or even hour, when they came into the possession of the clerk for that purpose.

A deed properly acknowledged for record, is to be taken as if recorded from the date of its deposit.

Our conclusion is, that the record shows that the deed and certificate of acknowledgment were recorded in due time, and that the deed was, therefore, a bar to the plaintiff's recovery, as to so much of the land as it embraced, upon the demise of Mrs. Fauntleroy's heirs.

GILL AND SIMPSON *vs* FAUNTLEROY'S HEIRS, &C.

The deeds for the land in contest in the five last cases.

In the other five cases the defendants claim under two sets of deeds from Fauntleroy and wife. Some of the first set were made as early as 1806, and none later than 1814. The second set were made in 1831–2–3. All of the first set were defectively acknowledged by Mrs. Fauntleroy, being a mere relinquishment of her right of dower, and the second set, according to the recitals, were executed with a view to perfect the title.

But objections are made to the authentication of these last deeds, as well as the first, and also to the certificates of the recording clerk. The last objection has already been considered and disposed of in the case of Ramsey; the certificates, or those to which objections are raised, being similar to the certificate in that case.

In the case against Simpson, &c., the defendants claim under a deed to Holtzclaw, bearing date in 1807, but not so authenticated as to pass the title of Mrs. Fauntleroy. They also rely upon a deed, purporting to be executed by same parties to Holtzclaw's executors and devisees, in 1831.

The certificate upon the last deed, and upon which its validity depends, is as follows:

"KENTUCKY, LINCOLN COUNTY, SCT.

The certificate on the deed to Holtzclaw.

"I do certify that on the day of the date hereof, this deed from John Fauntleroy and Margaret Fauntleroy, his wife, to Josiah Holtzclaw and Benjamin Holtzclaw, executors of the last will and testament of Benjamin Holtzclaw, deceased, was produced to me in my office, and acknowledged by the said John Fauntleroy and Margaret, his wife, to be their act and deed; she, the said Margaret, being examined by me privily and apart from her husband, declared that she signed, sealed, and acknowledged the same, thereby relinquishing her right of inheritance, and wishes not to retract it; and acknowledged said writing, again shown and explained to her, to be her act and deed, and consents that the same may be recorded; whereupon the said deed, together with the foregoing certificate, hath been duly recorded in my office. Given under my hand this 26th day of October, 1831, as Clerk of the Lincoln County Court.

"THOS. HELM, *Clerk Lincoln County Court.*"

It is contended this certificate is insufficient in not showing that the *feme* declared she freely and willingly signed, sealed and acknowledged the deed.

The object of the deed, as appears from the recitals, was the confirmation of the previous deed of 1807, or effectually to pass the title, if that did not. It is expressly recited that the grantors had conveyed or attempted to convey the same land by the former deed, but that doubts existed whether it was effectual to pass the title. The consideration was the previous sale and attempted conveyance, and the further consideration of one dollar.

Of the contents and object of the deed and the effect of her act, Mrs. Fauntleroy was fully informed. That it was shown and explained to her upon privy examination, does not rest upon the presumption merely, that the clerk had, in that respect, discharged his duty, but his certificate, in express terms, states that fact. With this information she declares, upon privy examination, that she signed, sealed and acknowledged the deed, and wished not to retract it, and acknowledged the same, again shown and explained to her, to be her act and deed, and consented that it might be recorded.

The question is whether these facts import that she acted freely? That she acted understandingly, is evident. The declaration that *she did not wish to retract*, is equivalent to a declaration that she wished the deed to stand as her deed; and she further evinces this desire by again acknowledging it, and consenting that it might be recorded. It seems to us this should be regarded as tantamount to a declaration that she freely acknowledged the deed. It is true the certificate is not in this respect in literal conformity with the statute, but *that*, as is said by this Court in *Nantz* vs *Bailey*, is not necessary. The form is not essential. It is only requisite that it should expressly or by clear implication, import that the examination and acknowledgment were, in effect, conformable with the statute. The certificate in this case is, in our opinion, of that character, and is deemed sufficient to pass the title of Mrs. Fauntleroy, to the land in the deed mentioned.

GILL AND SIMPSON
*vs*
FAUNTLEROY'S
HEIRS, &c.

To a deed of confirmation the clerk certified that it was shown and explained to the *feme* on her privy examination, that she acknowledged, desired not to retract it, and consented that it be recorded, it was held valid to pass the title of the *feme*.

'GILL AND SIMP-
        SON
        vs
FAUNTLEROY'S
HEIRS, &c.

In the other four cases, the last deeds are, in our opinion, duly authenticated and recorded, and so as to pass the title of Mrs. Fauntleroy. Our conclusion, therefore, is, that there is no error in any of the judgments to the prejudice of the plaintiff, so far as recovery was sought upon the demise of her heirs.

In the two appeal cases, the deeds to George and Stapp, being, as we have seen, void as to Mrs. Fauntleroy, and her husband having no estate by the courtesy, it is clear, according to the well settled doctrine, the plaintiff was entitled to recover upon the demise of her heirs. But it is insisted that the judgments being for the whole land embraced in those deeds, is for too much. That the devisees of Anne Harrod were barred by the statute of limitations, and that upon the demise of the heirs of Mrs. Fauntleroy, the recovery should only be to the extent of her interest or title, which was an undivided third part of the land.

As the patentee died in 1787, leaving his mother and half sister his only relatives, his land, it is manifest, under the fourth and thirteenth sections of the statute of Virginia of 1785, directing the course of descents, descended to them in the proportion of two parts to the former and one to the latter. But whether the plaintiff was or not, entitled to recover upon the demise of the devisees of Anne Harrod, it is not deemed important, in reference to these judgments, to decide. For even conceding that he was not, the judgments are, nevertheless, in our opinion, right.

The fact is agreed that George and Stapp entered and took possession of the land embraced in their respective deeds, at the dates thereof, claiming it as their own, and that they and those claiming under them, have so held and claimed ever since. They rely upon no other title whatever, except these deeds and their possession.

Where a convey-
ance was made
by husband and
wife, and posses-
sion taken under
their deeds, of
land claimed by
the wife, though

The title attempted to be conveyed by the deeds, it is very evident, was the title of Mrs. Fauntleroy. It appears she had title at the time, and it is not shown nor pretended, that her husband had any other title except in her right. In point of fact, therefore, although not so agreed in express terms, it is evident George and

Stapp acquired possession under the title of Mrs. Fauntleroy, and are, therefore, and those claiming under them, estopped to controvert it when asserted by her or her heirs. And as they acquired the entire possession under her title, they cannot controvert it or the right of her heirs to recover as to any part of the land. The heirs have brought their action within the time allowed by law, after their right of entry accrued, and are, therefore, not affected by the defendants' possession, whatever may have been its character or duration. These positions are sustained by this Court in *Miller* vs *Shackleford*, (3 *Dana*, 289: 4 *Dana*, 264;) *Gregory's heirs* vs *Ford*, (5 *B. Monroe*, 471, *and other cases.*)

No further objections being made in regard to the judgments in the two first cases, by the appellants, it results that there is no error in them to their prejudice, and they are, therefore, affirmed.

In the remaining branch of these causes, the main and important question is, whether the plaintiff was entitled to recover upon the demise of Harrod's devisees· This question turns upon the character of the possession acquired under the first class of deeds. All these deeds are deeds of general warranty, and purporting to convey the entire estate in fee. They were all duly executed and recorded as the deeds of John Fauntleroy, but although purporting also to be the deeds of his wife, were all void as to her with the exception of the one to Ramsey, which, as we have seen, was effectual to pass the title of both. At the date of their respective deeds, the grantees, entered and took possession of the land therein embraced, claiming it as their own, and have ever since, or those claiming under them, so held and claimed.

It is contended on the one side, that this possession, as to Mrs. Harrod, was adverse, and having been continued for more than twenty years before these suits were instituted, was a bar to the recovery of her devisees. On the other side, this position is denied, and it is insisted as the land descended to Mrs. Harrod and her daughter as co-parceners, and as the possession was acquired and held under the deeds of the husband of the

GILL AND SIMPSON vs FAUNTLEROY'S HEIRS, &c.

the deed be ineffectual to pass the title of the *feme*, the grantees in the deed are estopped to assert an outstanding title in a third person, in a contest with the heirs of the *feme* after the death of the husband: *Miller* vs *Shackleford*, (3 *Dana*, 289; 4 *Ib.* 264; 5 *B. Monroe*, 471.)

GILL AND SIMP-
SON
*vs*
FAUNTLEROY'S
HEIRS, &c.

Where a *feme covert* who was a parcener, united with her husband and purported to convey the whole estate in fee, in lands, and their grantee took possession under the deed and held for more than twenty years—Held that an ouster mightbe presumed and the other parcener barred.

latter only, except in the case of Ramsey, it was not adverse, but friendly to her title, and consequently not adverse but friendly to her co-parcener.

The title of both Fauntleroy and wife having passed by their deed to Ramsey, there can be no doubt that his possession was adverse to them both. It is true *their* title only passed by the deed, but they assume to be the exclusive owners and undertake to convey the entire estate in fee, thereby denying any right in Mrs. Harrod. Ramsey took possession, not as tenant in common with her, or with any knowledge, so far as appears, of her title, but claiming to be himself the sole owner. An open and exclusive possession, thus acquired and held without interruption, for more than twenty five years, is, in our opinion, sufficient to bar a recovery by Mrs. Harrod or her devisees. The facts are sufficient to authorize a jury to presume an ouster, to constitute which, an actual expulsion of Mrs. Harrod from the premises, was not necessary, as supposed; nor was it necessary that she should ever have been in possession.

One tenant in common claiming the whole estate and denying the right of his co-tenant, and refusing to pay any part of the profits to the co-tenant will authorize the jury to presume an ouster:

The doctrine is, that a denial by one tenant in common, of the title of his co-tenant, claiming the whole himself, and a refusal to pay him his share of the profits, constitutes an *ouster*, and renders the possession adverse. Such was the doctrine laid down by Lord Mansfield in *Doe ex. dem. Fisher and wife, &c.* vs *Prosser*, (*Cowper*, 217.) Such was also held to be the law in *Jackson, ex. dem. Bradt, &c.* vs *Whitlock*, (6 *Cowan's Rep*, 633.)

Where husband and wife unite in a deed of the lands of the wife, which is not so acknowledged & certified as to pass the wife's right, she has no cause of action during the life of the husband, and therefore no statute of limitation operates upon her right until after his death.

So it has also been held that one tenant in common hindering the entry of another, is an ouster: *Gordon* vs *Pearson*, (1 *Mass. Rep.*, 323.) The fact also, that one tenant in common is in possession of the estate, claiming to hold it by a deed covering the whole of it, has been held sufficient evidence of ouster to support ejectment by a co-tenant: *Clark* vs *Vaughan*, (3 *Conn. Rep.* 191.)

But whether there has or not been an ouster, is a question of fact which it is the province of the jury to decide. What facts will authorize a jury to presume an ouster, is often a matter of law for the Court to decide. Thus in the case in *Cowper, supra*, it was held that the jury might presume an ouster from the fact that one

tenant in common had been in the sole possession of the premises, and enjoyment of the rents and profits for thirty six years, without any demand or claim by the other. The presumption of ouster from lapse of time and exclusive possession, was also held to be authorized in *Jackson* vs *Whitlock*, *supra*, and also in *Culler*, *&c.* vs *Motree*, (13 *Sergt. & Rawle*, 633;) *Jackson* vs *Tibbitts*, (9 *Cowan*, 253.) Here Ramsey was not only in the sole possession near twenty six years, without any assertion of claim or right to either the land or the profits by Mrs. Harrod, although laboring under no restraint or disability, but was all the time claiming the entire estate in opposition to all the world, under a deed of record purporting to convey to him the whole land in fee. These facts were, in our opinion, sufficient to authorize the Court below, substituted for the jury, to presume an ouster and bar the recovery of the devisees; and according to the authorities referred to, even if Fauntleroy and wife had thus entered, claiming the whole land as their own, had taken and held the exclusive possession for the same period, without any demand or claim by Mrs. Harrod, the presumption of ouster in such case, should also have been indulged.

In the other cases, the first set of deeds being void as to Mrs. Fauntleroy, were merely the deeds of her husband. They still purport, however, to convey the entire estate in fee. The grantees entered believing, it may be fairly presumed, they had acquired an estate of that character. They did not look to Fauntleroy for title nor regard themselves as his tenants, nor as the tenants of his wife, or as holding the possession for her; nor did they enter as tenants in common with Mrs. Harrod, or recognize any right or title in her whatever. It is evident they looked upon the land as their own, absolutely and unconditionally their own, and they took possession claiming it as their own. Their possession, tested by the obvious motives and intentions, the *quo animo* of all the parties concerned, including even Mrs. Fauntleroy, was manifestly adverse to Mrs. Harrod and all the world.

In the agreement of facts it is expressly admitted that Fauntleroy *and wife* sold these lands and made these deeds, the right of questioning the validity of the deeds, however, is reserved. They did not sell a partial interest, but the whole land. The deeds of confirmation and their recitals, made twenty years afterwards, very conclusively show that such was the intention, and that Mrs. Fauntleroy so understood it, and regarded the purchasers as the owners of the land and not as holding the possession for her.

But no matter what may have been the intention of the parties or the honest impressions of the grantees in regard to their rights, it is clear that neither the first deeds nor the possession under them, however it may be characterized, would be availing against the right of Mrs. Fauntleroy, upon the termination of the interest or estate of her husband. No statute of limitations would commence running against her until she had a right of entry, which was suspended during the coverture, by the conveyance of her husband, and would only revive or accrue when it terminated. But although she would not be affected by the conveyances or the possession, which as to her might not be deemed adverse, yet it by no means follows that Mrs. Harrod, who had a present interest and labored under no disability, would not be; or that the possession as to her, would not be adverse.

It will be conceded, as contended, that though the whole land was sold and the deeds purport to convey the whole in fee, yet that nothing passed by them except the estate of Mrs. Fauntleroy during her coverture. As a general proposition, it will also be conceded that an entry by one tenant in common, (and it may here be remarked, that the general principles applicable to tenants in common, apply to co-parceners,) will enure to the benefit of all. But this proposition is based upon the supposition that the entry is made either *eo nomine,* as tenants in common, or that it is silently made, without any particular avowal in regard to it, or without notice to a co-tenant, that it was adverse. An entry of the latter character would not be presumed adverse.

*The entry of one tenant in common or a parcener, will enure to the benefit of his co-tenant or parceners, unless it be adverse or by claiming the whole, when it will be presumed adverse.*

So also, possession by one tenant in common, *as such,* will be the possession of the co-tenants also, and in the absence of proof to the contrary, the presumption would be that the possession was so held. But the doctrine has been long since held, and the authorities already cited sustain it, that one tenant in common may so enter and hold, as to render the entry and possession adverse, and amount to an ouster of a co-tenant.

In this case, as we have seen, the parties did not enter nor hold possession, claiming to be tenants in common with Mrs. Harrod. Nor can any such presumption be indulged, in the face of the agreed fact that they entered and held, claiming in their individual right, or claiming the land as their own. They entered as purchasers of the whole land from Fauntleroy and wife for a valuable, and it may be presumed, for a full and fair consideration, or it may be conceded as purchasers from Fauntleroy alone, for the effect and result in either case will be the same. During the coverture he was a tenant in common in right of his wife, with Mrs. Harrod. If he had entered claiming the whole land in right of his wife, taken the exclusive possession, denying the claim and title of Mrs. Harrod, and had actually refused to let her into the possession, this would unquestionably have constituted an ouster, and after a lapse of twenty years her right of entry would have been tolled, and she would have been forever barred. The right of Mrs. Fauntleroy to recover the land after the termination of her husband's estate, or the actual recovery of it, would not aid Mrs. Harrod, as she had no estate in reversion or remainder, and labored under no disability. But suppose Fauntleroy had merely entered, claiming the whole land in right of his wife, taken the exclusive possession, and all the rents and profits, this, so far from being consistent with the right and title of his co-tenant, would have been a most emphatic denial of them, and after a lapse of thirty years without demand or claim by her, or any admission by him or his wife of her right, we have no hesitation in saying, would authorize a jury to presume an ouster.

The defendants in these causes do not, in our opinion, in any view of the case, occupy a more unfavorable attitude than Fauntleroy would have occupied under the state of case supposed. He sold them or their vendors the whole land, and thereby, and by his deeds, assumed to be the owner. He gives them the exclusive possession, and covenants to protect them in the enjoyment of it against all persons whatever. Thus claiming, they continued in the sole and undisturbed possession, enjoying all the profits, without recognition by them or their grantor or his wife, of any interest or claim in Mrs. Harrod, or any claim or demand by her, in some of the cases near forty years, and in only one less than thirty, and in that more than twenty nine years. That the law would regard their possession as not adverse to Mrs. Fauntleroy, in reference to her claim, does not vary the case. That would not change its character as to Mrs. Harrod, nor would it follow that there could as to her, therefore, be no ouster. There might be an actual expulsion, or other acts equivalent to an actual ouster of her, which would not affect the rights of Mrs. Fauntleroy, or be inconsistent with an amicable holding as to her.

But it is insisted that in no aspect of these cases would the statute commence running against Mrs. Harrod, until she had notice that the defendants entered and claimed to hold adversely, and that there is no evidence of such notice. Even if the correctness of this proposition as to the necessity of notice be conceded, and that there is no express or direct proof of it, still we are of opinion a jury would be authorized, from the facts and circumstances, and great lapse of time, to presume notice, not only for more than twenty years before suit brought, but even from the commencement, or the time when the possession was taken. It is admitted that Mrs. Harrod resided in Kentucky from 1785 till her death in 1843. From 1792 she appears to have been a widow. In 1806 she united with Fauntleroy in conveying a portion of this very land. The defendants were in the open and exclusive possession, under deeds purporting to sell and convey the whole land in fee, duly authenti-

cated and recorded as to her son-in-law, and purporting also to be the deeds of her daughter. For thirty years she sets up no claim, makes no demand, receives none of the profits, and in the mean time her daughter and son-in-law make additional conveyances, recognizing and confirming the previous sales and conveyances; and shortly before her death in 1842, Mrs. Harrod makes her last will and testament, in which she makes no allusion whatever to any portion of the land in contest. Under such circumstances, the presumption of notice, and from the time the parties took possession, claiming the land as their own, might well be indulged. This conclusion is fully sustained by the principle settled by this Court, in *Farrow's heirs* vs *Edmonson, &c.*, (4 *B. Monroe*, 605.)

In the view which we have taken, it results that the execution of the second class of deeds, affords no aid to the claim of the devisees. They do not change the character of the original entry and possession as to Mrs. Harrod, but are virtually in confirmation of it. They are a mere reiteration of claim to the whole land by the grantors, and of the denial of any right in her.

But lastly, it is contended that the defendants can, in no event be protected by the limitation, except to the extent of their actual enclosures. In answer to this objection, it need only be remarked, that the fact is expressly admitted, that possession was taken by the grantees, of the land embraced in their respective deeds. Possession was thus taken, not of a part, but of the whole land, and has been so continued ever since. Whether the whole was actually enclosed, does not appear, and is not deemed material.

In regard to the cross errors in the appeals, they present no questions which have not already been considered and disposed of, and are not deemed available.

Upon the whole, no sufficient reason is perceived for disturbing any of the judgments, and they are therefore all affirmed.

*Clay, Bradley and J. & W. L. Harlan* for Fauntleroy's heirs; *Turner and Dunlap* for Ramsey and others.