LAUGHLIN BROS. & CO. *et al. v.* FREAM *et al.*

Decided November 30, 1878.

1878
Special Term.

1. A deed of lands is made in 1855 by a party, other than a husband, to a married woman; but the deed does not give her a separate estate therein. The 66th chapter of the Code of West Virginia does not convert her estate in such case into a separate estate.

2. The certificate of the acknowledgment of a deed by a married woman is as follows: "State of West Virginia, Preston County, ss: Personally appeared before me the undersigned, notary public for said county, Abby Fream, the wife of said J. Fream, whose names are signed to the foregoing assignment, and being by me, in accordance with the law in that case made and provided, and having the said writing fully explained to her, she acknowledged the same to be her act and deed for the purposes therein specified and set forth, and that she wished not to retract it. In testimony whereof, I have hereunto signed my name and affixed my seal dated aforesaid. R. W. Monroe, [Seal.]" Such a certificate is fatally defective, because it does not show that she was examined privily and apart from her husband, and it does not show, that she declared she had willingly executed the same.

3. If a deed be signed and sealed by a married woman and her husband, and the certificate of her acknowledgment is in due form, yet if she is not on the face of the deed one of the grantors therein, such deed is inoperative to convey any interest she may have in the real estate conveyed thereby, or to relinquish her contingent right of dower in the lands therein named.

Appeal from and *supersedeas* to two decrees of the circuit court of Preston county, pronounced, the first on the

15th day of April, 1875, and the second on the 17th day of April, 1876, in a cause in said court then pending, wherein Laughlin Bros. & Co. and others were plaintiffs and Jacob Fream, Abby Fream and others were defendants, granted on the petition of the said Abby Fream.

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

Hon. John Brannon, judge of the sixth judicial circuit, pronounced the decrees appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case:

Laughlin Bros. & Co and Samuel N. Prather in 1872 brought a chancery suit in the circuit court of Preston county against Jacob Fream, Abby Fream his wife, Adolphus Armstrong, trustee, Mortimer H. Johnson and John C. Johnson and Ann Dailey. The bill alleged, that on August 4, 1855, for the sum of $20.00, John Asberry and wife conveyed to Abby Fream two lots in Independence, Preston county; that on one of these lots her husband, Jacob Fream, put valuable improvements; and on April 29, 1858, Jacob Fream and Abby, his wife, executed to P. L. Kimble, trustee, a deed conveying said lots and also a lot adjoining the same, conveyed by one Hyatt to Jacob Fream, and a lot purchased by him of one Fortney and a house and lot in Newburg, conveyed to Jacob Fream by one Gordon, and fourteen acres of land near Independence, conveyed to him by one Worthen.

This deed recited, that Jacob Fream and M. H. Johnson entered into a partnership in November, 1854, for the purpose of selling goods in Independence; that Jacob Fream had used $1,600.00 of the partnership assets in improving the lots aforesaid, conveyed to Abby Fream his wife, and also $300.00 dollars in buying said house and lot in Newburg of Gordon; and the deed provided, that to pay this indebtedness of Jacob Fream the trustee, Kimble, should rent out, or sell, in his discretion, the Newburg house and lot and this fourteen acres of land,

and after the expiration of two years the other real estate conveyed by this deed. It was signed and sealed by Jacob Fream and his wife. It was duly acknowledged by Jacob Fream before a justice of the peace on the next day; and there is at the foot of this deed the following acknowledgment of Abby Fream his wife.

"STATE OF VIRGINIA, PRESTON COUNTY, SS:

"Personally appeared before me the undersigned, notary public for said county, Abby Fream, wife of said J. Fream, whose names are signed to the foregoing assignment, and being by me in accordance with the law in that case made and provided, and having the said writing fully explained to her, she acknowledged the same to be her act and deed for the purposes therein specified and set forth, and that she wished not to retract it. In testimony whereof, I have hereunto signed my name and affixed my seal, date aforesaid.

"R. W. MONROE, *N. P.* [Seal.]"

On the 20th of August, 1858, this deed, with these certificates attached, was recorded by the clerk of the county court of Preston.

The bill further alleged, that on January 23, 1872, Jacob Fream conveyed to Adolphus Armstrong, trustee, one and one-half acres of ground in Independence, which on or about April 25, 1857, had, the deed recites, been conveyed by William Elliott to Jacob Fream & Co., consisting of said Fream and Mortimer H. Johnson, and which deed was so executed by mistake, and ought to have been executed to the firm of Johnson & Fream, formed by the same parties on April 29, 1858. This land so conveyed to Armstrong, trustee, was in trust to pay the indebtedness of Jacob Fream to the said firm, as set out in the prior deed of trust of April 24, 1858.

This deed further recites, that Kimble, the trustee in that deed, was dead, and proceeds thus: "Therefore the said Fream and his wife do appoint and substitute said Adolphus Armstrong trustee in the place of said Kimble, and do hereby authorize and fully empower him to

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

execute said deed of trust of 29th of April, 1858, as fully and effectually in all respects as said Kimble could have done, if living." This deed was duly and legally acknowledged by both Jacob Fream and Abby, his wife, the next day, January 23, 1872, and was properly and legally admitted to record on January 24, 1872, in the clerk's office of Preston county.

On the same day this last deed of trust was given Jacob Fream confessed judgment in the clerk's office of Taylor county, in favor of M. H. Johnson, for the use of John C. Johnson, for $2,500.00 with interest from November 26, 1866, and $6.20 costs, which was docketed on January 23, 1872, on the lien docket of Preston county, subject to a credit of $500.00 paid March 1, 1868, and $50.00 paid April 13, 1868, and $200.00 paid May 5, 1869.

The bill further states, that Ann Dailey had sued out an attachment against Jacob Fream from the clerk's office of the circuit court of Preston county, which was a lien on all his real estate. The bill alleges, that these deeds of trust and judgment confessed were fraudulent, and the deeds executed and judgment confessed to delay, hinder and defraud the creditors of Jacob Fream, and especially the plaintiffs Laughlin Bros. & Co. and Samuel N. Prather to whom said Fream was indebted : to the first in the sum of $329.42, and the second $186.18, subject to certain credits. That these plaintiffs, to test the validity of these deeds of trust and judgment, had theretofore brought a suit in the circuit court of Preston county and issued an attachment therefor, which constituted a lien on all the lands of said Jacob Fream. Despite this the said Armstrong, trustee, was going at an early day to sell the property conveyed by these fraudulent deeds of trust.

The bill further alleges, that the debts secured by these deeds of trust are not due, but that they are pretended and fraudulent debts, and that there is now nothing due on them. That the lot conveyed to Abby Fream was, when conveyed, worth only $20.00; and that her hus-

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

band, Jacob Fream, has put on said lot several thousand dollars worth of improvements, and they are liable to his debts.

The bill prays an injunction to prevent the sale of this property conveyed by the deeds of trust, that they as well as the confessed judgments may be set aside and annulled as fraudulent, and that said Jacob Fream's real estate may be sold subject to the interest of said Abby Fream as above stated to satisfy the plaintiffs' debts; and for general relief. The injunction asked was awarded February 21, 1872.

Abby Fream answered the bill. She does not answer except as to her interest in the estate conveyed to her by John Asberry. She says, she bought these lots with money advanced to her by her father; that her father made advances and gifts to her at sundry times, out of which the improvements put on said lot were paid for. Some payments she made herself and some through her husband, who was then in such a condition, that no one doubted his success in business. She cannot state her various expenditures on these improvements, as they extended through a long period of time; but she is satisfied, that they aggregate the value of the building on these lots. She claims, that though at the time of much of these expenditures her husband had his marital rights, such as occupancy during marriage, yet that she has now the right to hold the same free from the control, debts and liabilities of her husband.

Mortimer H. Johnson answered the bill, claiming that the debts secured by said deeds of trust were just and due in the manner stated in the recitals in the deeds, that he assigned this indebtedness to John C. Johnson, and Jacob Fream confessed judgment for his use as stated in the bill; when this judgment was confessed, that Fream did not have present all his receipts, but it was agreed he should have credit for other payments, for which he had receipts, these other payments are: $250.00 June 29, 1869; $250.00 October 30, 1869; and

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

$100.00 December 2, 1870; and subject to these credits, and those given at the time said judgment was confessed, the balance, amounting to about $1,800.00 principal and interest, is still due; and that it is the same debt secured by the deeds of trust, which were *bona fide* and not fraudulent and are entitled to priority.

Jacob Fream in his answer admits the justice of the claim of the plaintiff against him, and that the statements made by Johnson in his answer relative to his indebtedness to him as well as ·its fairness are also true, but he claims, that the lien created by the deed of trust of April 29, 1858, no longer exists, as he confessed a judgment for the balance due on the debt secured by this deed of trust, and that this judgment was in favor of another creditor, to whom the debt was assigned; and that this deed of trust was not binding on his wife, because she did not properly acknowledge the same. He claims, that the expenditures made on the lot of his wife were expenditures of her funds, and not of his. An amended bill making additional parties was filed; and John C. Johnson filed his answer; but as they are not in the record as brought to us, I presume they have no bearing on the controversy in this Court; and depositions were taken, which are also not before us for, I presume, the same reason.

On the 15th of April, 1875, the cause was heard, a decree rendered that the two trust deeds of April 29, and January 22, 1872, were valid and subsisting liens on the property, thereby conveyed, to the extent of the balance of the debts remaining unpaid, and that the judgment confessed by Jacob Fream to Mortimer H. Johnson for the use of said John C. Johnson, on January 22, 1872, was also a valid and subsisting lien, but that it was the same debt secured by said deed of trust. This decree then proceeds thus:

" And it further appearing, that the debt secured in and by trust deeds aforesaid was, and is in fact, the sole debt of the said Jacob Fream, and not of his wife, Abby

Fream, the court doth futher order, that each and all of the real estate described in and conveyed by the said two deeds of trust, except the lot and appurtenances on the same described as conveyed by J. Asberry and wife to the defendant, Abby Fream, in the town of Independence, shall be first sold and the net proceeds of such sale applied to the payment of the debt or debts so secured by said deeds of trust, and that the aforesaid excepted lot so conveyed by J. Asberry and wife to Abby Fream as aforesaid, being her sole and separate property, shall only be liable for so much of said trust debt or debts, if any, as shall remain unpaid, after applying the net proceeds of the sales of the property of Jacob Fream as aforesaid, and no more. And it is hereby adjudged, ordered and decreed, that this cause be and the same is hereby referred to a commissioner of this court to ascertain, audit and settle the several debts, their priorities and liens, if any, in the bills and proceeding mentioned, including the trust debts aforesaid, as well as that of the confessed judgment aforesaid, with anything else deemed pertinent by himself or specially required by any of the parties, and that he report his proceedings herein to this court; provided that before taking said accounts said commissioner shall first give notice thereof as required by section four of chapter one hundred and twenty-nine of the Code of 1868, which publication so made shall be equivalent to personal service on said parties. All other questions not here passed upon are reserved."

The commissioner executed the order of reference directed by this decree, and, there being no exceptions to it, by a decree rendered April 17, 1876, this report was approved and confirmed; and after reciting the various debts audited by said report as liens and their priorities, said decree proceeds thus:

"And it further appearing, that each and all of the claims or debts so stated in said report are the individual and sole debt or debts of the said Jacob Fream, and that all of the several parcels of real estate named and described in and by two several deeds of trust in fact be-

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

long to him, the said Jacob Fream, alone, except only the lot and appurtenances thereon described as conveyed by J. Asberry and wife to Abby Fream, situated in the town of Independence, which is the sole and separate property of her, the said Abby, and being the same property described by Exhibit 'A' of the bill. On consideration whereof, it is further adjudged, ordered and decreed, that as to said last named lot and appurtenances thereon none of the said claims or judgments shall constitute liens except said claim No. 1 of the report, which is a lien thereon by reason of the said Abby Fream having joined her said husband in the said deed of trust; provided however, that each and all of the parcels and real property named and described in said deed of trust, respectively, other than the said lot and appurtenances thereon so conveyed to her, the said Abby Fream, as aforesaid, shall be first sold, and the proceeds thereof exhausted, if necessary so to do, in the payment and discharge of the said claim No. 1 of the said report; but in case said parcels shall not sell for a sufficient sum to fully pay off and discharge said claim No. 1, with its accruing interest and costs of such sale, then, and in that case only, shall the said lot &c., belonging to her, the said Abby Fream, be sold to satisfy the residue thereof; but provided further, should the aforesaid sale of property of the said Jacob Fream sell for more than sufficient to wholly pay off and satisfy said claim No. 1 of the report and costs of sale and of this suit, then and in that event the residue of such proceeds of sales shall be applied to the payment of the several other claims named in said report; according to their priorities fixed by said report by decree hereafter to be made. And it is hereby further ordered, that unless the said Jacob Fream, or some one for him, shall pay and discharge the said several claims and debts named in said report, with the accruing interest thereon, and costs of this suit within sixty days from the rising of this court, then James A. Brown and Philip H. Keck,

42

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

who are hereby appointed special commissioners for the purpose, do proceed to sell the several parcels of real estate in the said two several deeds mentioned and described in the manner and order hereinbefore provided. Such sale or sales shall be at public outcry in front of the court house at Kingwood on some court day, for one-sixth part of the price thereof cash in hand, and the residue on a credit of six, twelve and eighteen months, taking bonds from the purchaser, with approved security (bearing interest from the day of sale), and retain the title until the further order of the court; provided, further, that before making said sale said commissioner shall first advertise the time, terms and place thereof for at least four consecutive weeks in some weekly newspaper published in Kingwood, also post a copy thereof at the front door of the court-house aforesaid for a like period. And before receiving such cash payments such special commissioners shall execute a bond, with security approved by the clerk of this court in the penalty of $500.00 conditioned as the law in such case directs; and finally that the said special commissioners report their proceedings herein to the court for a further order or decree herein. All of which is decreed accordingly, on petition of Abby Fream."

There was awarded by this court an appeal from and *supersedeas* to so much of the decree of April 15, 1875, as adjudged that the two deeds of trust in the bill and proceedings constitute valid and subsisting liens on all property conveyed by them, and also to so much of the decree of April 17, 1876, as adjudged that the claim of Mortimer H. Johnson, for the use of John C. Johnson, of $2,185.13, with interest thereon from April 12, 1876, is a lien by reason of said deeds of trust on the lot and appurtenances therein conveyed by J. Asberry and wife to Abby Fream, situate in the town of Independence; and to so much of said decree as on certain conditions named in said decree orders the sale of said lot to be made.

· *William G. Brown* and *Davenport & Dovener*, for appellants, cited the following authorities :

1878
Special Term.

Laughlin Bros.
*et al.* v.
Fream *et al.*

1 Call 190; 1 Munf. 518; 12 Leigh 445; 14 Gratt. 501; 3 W. Va. 163; 7 W. Va. 567; 10 W. Va. 198; 8 B. Mon. 177; *Id.* 217; The Reporter, July 17, 1878; *Id.* 1869; 6 Caldw. 452; 10 Ill. 313; 5 Biss. 160.

GREEN, PRESIDENT, delivered the opinion of the Court :

The question presented by the record for the decision of this Court is, whether there be error in so much of the decrees of April 15, 1875, and April 17, 1876, as has been quoted above in the statement of this case. The residue of said decrees are not before us for review. In such residue the appellant, Abby Fream has no interest, and it is not involved in her appeal. The portion of the decree of April 15, 1875, appealed from, contains what, so far as the record is before us, seems to be a false recital, that is, "that the lot conveyed by J. Asberry and wife to Abby Fream was her sole and separate property." And on this apparently false assumption, this and the decree of April 17, 1876, are in part based.

By the deed of Asberry and wife, they simply "grant unto the said Abby Fream with general warranty" these lots. There is not a word in the deed, which in any manner indicates, that the grant was to her sole and separate use. It was dated August 4, 1855; and she was then married. It is therefore unquestionable, that she had no sole and separate property in these lots by virtue of this deed. It is equally obvious, that the character of her interest in these lots is in no manner affected by the first section of ch. 66 of the Code of W. Va., passed since. It simply provides, that all property hereinbefore conveyed to a married woman by any person other than her husband *as her sole and separate property* shall be and remain her sole and separate property. But this section has no application obviously, as this property was not conveyed to her *as her sole and*

Syllabus 1.

*separate property* by the deed. The other sections of this chapter have obviously no application to this case.

Abby Fream admits apparently in her answer, that under this deed her husband had his marital rights originally; but she claims, that she is *now* entitled to hold the same free from the control, debts and liabilities of her husband. This claim is, I suppose, based on the provisions of chapater 66 of Code of West Virginia, and if so, has no foundation. I presume the court below took the same view, that she did in her answer, and if so, committed an obvious error. If there be nothing in the entire record showing, that she has a seperate estate in the property conveyed to her, by Asberry and wife except the deed, then she has no separate estate in this property, but her husband has his marital rights in the same, and it is liable to the payment of his debts to that extent. If however there be anything else in the record now, or anything else be brought into it hereafter, when the case goes back to the circuit court, it may determine then, whether she has a sole and separate estate in this property, as this question is not now intended to be finally determined by this court.

The only other question to be determined by us is: Did Abby Fream, by the deeds of trust of April 29, 1858, and January 22, 1872, convey her interest in these lots, which had been so conveyed to her by Asberry and wife, or did she thereby relinquish her contingent right of dower in any other real estate named in these deeds as owned by her husband, and in which she would have had such contingent right of dower, had she not signed said deeds? It is clear, that both of said deeds are totally inoperative, so far as she is concerned, and they can have no other effect than to convey the interest of her husband J. Fream, in the lands owned by him, subject to her contingent right of dower. The land owned by the firm of Johnson & Fream, in which she would have no contingent right of dower, if it were really partnership property, and his life-estate, by reason of his marital rights, in the lots conveyed to his wife by Asberry and wife,

which life-estate may be during the joint lives of himself and wife or of her own life, as under the facts he may be entitled to curtesy or not.  They must have exactly the same operation and effect, as if they had been executed by him alone.

The deed of trust of date April 29, was not acknowledged by her in such a manner as to make it binding upon her.  This deed was made April 29, 1858 ; and the law prescribing the proper mode of acknowledging it may be found in the Code of Virginia of 1849, chapter 121, section 4, page 513.  It provides that, when a husband and wife have signed a writing purporting to convey any estate, she may appear before a notary public, or other designated officer, and if on *being examined privily and apart from her husband,* and having such writing fully explained to her, she acknowledge the same to be her act, *and declare that she had executed it willingly* and does not wish to retract it, such notary, or other officer, shall certify the same in a prescribed form or a form to that effect ; and 7th section of chapter 121 of Code of Virginia of 1849, page 514, provides, that *when* the privy examination, acknowledgment and declaration of a married woman shall have been so taken and certified, and the writing delivered to the proper clerk and admitted to record, as to the husband and wife such writing shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature, which at the date of such writing she may have in any estate conveyed thereby.

At common law the execution of a deed by a married woman was entirely inoperative.  All the effect, which the execution by Abby Fream of the deed of April 24, 1858, can possibly have must be due to this statute.  Effect is given to such execution by her by the terms of the law, only when, in the words of the statute, " the privy examination, acknowledgment and declaration have been taken and certified as aforesaid."  The ac-

*[margin: 1878 Special Term. Laughlin Bros. et al. v. Fream et al.]*

knowledgment that the deed was her act was taken and certified; but neither the privy examination was taken, nor the declaration made, that she had executed the deed willingly, so far as the certificate attached to this deed shows.

Our courts have always required a substantial compliance with all the requirements of the law in the deeds of married women; and if in any particular there has been a failure to comply substantially with the law, our courts have declared the deed inoperative against her.

In *Countz* v. *Geiger*, 1 Call 193, President Pendleton says: "A *feme covert* can not pass her title without a deed accompanied by a privy examination to evince that she does not do it under her husband's influence."

In *Harvey* v. *Pecks*, 1 Munf. 518, it was decided, that "a deed from a husband and wife, without her privy examination and relinquishment, is utterly void as to her, and furnishes no consideration to support a subsequent conveyance."

In *Hairston* v. *Randolph*, 12' Leigh 445, it was held, that the certificate of privy examination of a married woman was fatally defective, which failed to show, that the deed was explained to the wife.

In *Grove* v. *Zumbro*, 14 Gratt. 501, it was held, that the certificate of her acknowledgment, even before the court of another State, must show her privy examination, and that the omission of any statement in the acknowledgment of a deed by a married woman, that she did not wish to retract it, was a fatal defect and rendered the deed inoperative as to her. And the same was held by our Court in *Linn* v. *Paton*, 10 W. Va. 198, and *Bartlett et al.* v. *Fleming et al.*, 3 W. Va. 165.

Our court has also decided, that an omission in the certificate of any statement of a declaration by the married woman, that she had willingly executed the same, rendered the deed totally inoperative as to her. See *Bartlett et al.* v. *Fleming et al.*, 3 W. Va. 163; *Leftwitch* v. *Neal*, 7 W. Va. 569.

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

The authorities in other States establish the proposition, that the certificate must show that the law has been in all respects substantially complied with. See *Gill & Simpson* v. *Fauntelroy's heirs*, 8 B. Mon. 177; *Blackburn's heirs* v *Pennington*, 8 B. Mon. 217; *Watson's lessee* v. *Bailey*, 1 Binn. 470; *Evans* v. *The Commonwealth*, 4 Serg. & R. 272; *Jamison* v. *Jamison*, 3 Whart. 457; *Webster's lessee* v. *Hall*, 2 Har. & M. (Md.) 19; *Heath* v. *Eden*, 1 Har. & J. (Md.) 751.

These authorities abundantly show, that the certificate of the acknowledgment by Mrs. Abby Fream, in this case, attached to the deed of trust of April 29, 1858, is fatally defective as to her. The portion of it intended, it is supposed, to show her privy examination simply says: " Personally appeared before me Abby Fream, and being by me in accordance with the law in this case made and provided, acknowledged, &c." It does not state that she was examined at all, much less privily examined apart from her husband. If it had even said " being by me examined according to law," it would still have been fatally defective; for the notary public was a ministerial, not a judicial, officer in this case, and whether the examination was made according to law, it was not his duty or province to decide. It was his duty to state the facts in regard to her examination, and leave it for the court to decide, whether she was examined according to law. *Gill & Simpson* v. *Fauntelroy's heirs*, 8 B. Mon. 179.

Again this certificate to the deed of April 29, 1858, totally fails to certify her declaration "that she had willingly executed the same." And this has been expressly decided by this Court in the case of *Leftwick* v. *Neal*, 7 W. Va. 569, to be a fatal defect in the certificate.

It is therefore unnecessary to consider other matters, in which it is claimed that this certificate is defective. The deed of April 29, 1858, was clearly inoperative and void, so far as it undertook to convey any interest of the married woman, Abby Fream, though it was valid and

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

Syllabus 3.

operative to convey her husband's interest in the property thereby conveyed. The deed of January 22, 1872, was also totally inoperative and void as to Abby Fream. The certificate of her acknowledgment of it is in legal form ; but she is on the face of this deed not one of the grantors, nor is she in any way named in, or referred to in this deed, except in the concluding clause, which is "now, therefore, said Fream and wife do appoint and substitute Adolphus Armstrong trustee in the place of said Kimble, and do authorize and fully empower him to execute said deed of trust of April 29, 1858, as fully and effectually in all respects as said Kimble could have done, if living." This provision professed only to substitute one trustee for another ; and this deed of April 29, 1858, having failed to convey her interest in the property purporting to be conveyed by it, this last deed could have no effect on her, it was inoperative as to her interest in the Asberry lots, because that interest was not conveyed by the deed of April 29, 1858 ; and if she had any dower or other interest in the lands conveyed to her husband Jacob Fream by this deed of January 22, 1872, it was not thereby conveyed, as she was not a grantor in this deed. It was therefore totally inoperative as to her.

I conclude therefore, that the decrees of April 15, 1875, and April 17, 1876, in expressing the opinion that the lots conveyed to Abby Fream by Asberry and wife were her sole and separate property, were erroneous, unless there is some evidence thereof contained in portions of the record not before this court; and that the circuit court in said decrees also erred in holding, that either the deed of April 29, 1858, or that of January 22, 1872, were operative and valid as to Abby Fream, or that any interest of her's was by said deeds conveyed, or in any manner affected ; and also so far as the court directed the sale of any of her interest in any of the property ordered to be sold ; she never having conveyed any of her own property, or relinquished any contingent dower interest in any of her husband's property by either of said deeds.

1878
Special Term.

Laughlin Bros.
et al. v.
Fream et al.

In the view taken by the circuit court, it probably regarded it as unnecessary to determine the question raised by the bill, whether the improvements on the Asberry lots were liable to the debts of Jacob Fream, because though put on his wife's land, they were paid for by him and no decision of this question has been made by the circuit court, and it would be therefore improper for us to express any opinion on the subject till the circuit court has acted upon this question, which it may do when this cause is remanded to that court.

So much therefore of the decrees of April 15, 1875, and April 17, 1876, as adjudged in the present state of this case that Abby Fream has a sole and separate interest in the lots conveyed to her by Asberry and wife by the deed of August, 4, 1855, and so much of said decrees as adjudged that the deeds of trust of April 27, 1858, and January 22, 1872, or either of them, constituted valid and subsisting liens on the interest of Abby Fream in any of the property, which was conveyed by said deeds, and also so much of said decrees as adjudged that her interest in the said lots conveyed to her by Asberry and wife, or her contingent dower interest in any of the real estate of her husband, was liable to be sold, or as ordered the sale of any of her said interest on certain conditions, are hereby reversed and annulled; and the appellant must recover of the appellees her costs in this Court expended; and as to the residue of said decrees this Court decides nothing, as such residue of said decrees is not before this Court for review by this appeal; and this cause must be remanded to the circuit court of Preston county, with instructions that it be further proceeded with according to the principles laid down in this opinion, and further according to the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREES REVERSED. CAUSE REMANDED.